TALIAFERRO et al., Ex'rs, v. REIRDON et al.

No. 29765. March 17, 1942.

Rehearing Denied June 16, 1942.

*126 P. 2d 696.*

44

George E. Rider, of Madill, and Busby, Harrell & Trice, of Ada, for plaintiffs in error.

Reuel W. Little, of Madill, for defendants in error.

RILEY, J. This is an appeal from an adverse judgment in an action for an accounting commenced by the plaintiffs, as executors of the estate of D. B. Taliaferro, deceased, against J. P. Reirdon et al.

Plaintiffs below, plaintiffs in error, are mentioned as executors, and de-

fendant in error J. P. Reirdon is designated defendant.

It appears that about January 1, 1924, defendant and D. B. Taliaferro entered into a partnership. The partnership agreement was oral. A retail lumber business, retail sales of oil, gasoline, and other activities were the partnership business conducted.

Each partner contributed $6,000 to the capital investment; D. B. Taliaferro contributed his $6,000 in cash.

The partnership business continued until November 2, 1927, at which time D. B. Taliaferro died. Defendant J. P. Reirdon conducted the business. D. B. Taliaferro took no active part. After the death of D. B. Taliaferro, defendant continued to operate the business in the firm name, which was Reirdon Lumber & Oil Company, until about July 21, 1937, at which time the executors commenced proceedings in the county court of Marshall county for final accounting. The county court, on May 12, 1938, entered an order directing the executors to file a suit for an accounting against J. P. Reirdon, and to join such other persons as proper.

This action was then commenced in the district court of Marshall county, wherein J. P. Reirdon and a number of other persons were made defendants. Issues were joined and trial had to the court without a jury. It appears that at the trial the executors made no serious attempt to establish liability as against any of the defendants except J. P. Reirdon. The trial court held that the executors had abandoned their claims as to all defendants except J. P. Reirdon. This holding of the trial court is not seriously questioned.

Therefore, the issue on appeal involves only the executors and defendant J. P. Reirdon.

D. B. Taliaferro died testate and in his will named B. N. Taliaferro and G. W. Taliaferro, his two sons, and others as executors of his will. The other executors died before the action was commenced, leaving the two sons the executors. The heirs are: B. N. and G. W. Taliaferro, two sons, LoRene Reirdon (nee Taliaferro) and Mary Byrd French (nee Taliaferro), two daughters. They were not made parties to this action. The trial court made findings of fact that D. B. Taliaferro at the time of his death was engaged in a general partnership business with J. P. Reirdon, and after his death the surviving partner continued to carry on the business in the firm name, and:

". . . that the executors of the estate, B. N. Taliaferro and G. W. Taliaferro, together with the other heirs at law, namely: LoRene Reirdon and Mary Byrd French, consented to and acquiesced in the continuation of this business, and by their consent and acquiescence a new partnership was formed."

Judgment was entered in accordance with said findings among others. From the judgment it appears that the court included the surviving partner, J. P. Reirdon, with the executors of the estate of D. B. Taliaferro, and all four of the heirs of D. B. Taliaferro, as members of a new partnership; their interests were not stated.

The court found that from time to time merchandise was purchased by the four heirs and by the executors for the estate from the partnership, all on credit, and at the end of the year the books of the partnership were balanced and the accounts of the individual heirs were charged to the D. B. Taliaferro estate. The estate was then given credit for the entire amount as dividends due the estate. Defendant took a like amount as his dividends. That the total amount of merchandise so purchased was $12,256.03; that the net profits of the partnership business from its inception were $26,729.84. The court adjudged that certain statements made and rendered periodically, once each six months, never having been questioned, amounted to and were "accounts stated," and that the executors and heirs were entitled to one-half of the net profits made, or $13,364.92; that $12,256.03 thereof had been paid to them in the way of dividends. This is giving them

credit for the merchandise so purchased by the heirs and executors, leaving a balance due the heirs and executors of $1,108.88 to be paid out of partnership funds remaining in the hands of defendant if sufficient, and if not sufficient, by defendant J. P. Reirdon. The judgment directed the sale of all remaining assets and for a supplemental report thereof to be made by defendant J. P. Reirdon.

There are nine assignments of error presented under six general propositions.

The first proposition is that the surviving partner became a trustee of his deceased partner and the only way he can relieve himself of his responsibility as trustee is by accounting for the partnership property. This is the law. 54 O. S. 1941, § 54, provides:

". . . . On the death of a partner, the surviving partners succeed to all the partnership property, whether real or personal, in trust for the purpose of liquidation, even though the deceased was appointed by agreement sole liquidator."

58 O. S. 1941, § 255, prescribes the duties of the surviving partner with respect to the partnership property. The first duty is that he, in company with the executor, administrator, or other person appointed by the judge of the county court, take and furnish to the executor or administrator a correct and full inventory and fair appraisement of all partnership property. He must then settle the affairs of the copartnership without delay, and account with the executor or administrator and pay over such balances as may from time to time be payable to the executor or administrator in the right of the deceased.

Title to all partnership property both real and personal vests in the surviving partner for the purpose of settling and liquidating the partnership affairs. The heirs of the deceased partner acquire no title directly to any part of the partnership property; they are to receive their interests in the property in the ultimate distribution by the executor or administrator, under supervision of the county court.

In this case the defendant for nearly ten years failed to comply with any part of the above provisions.

The vital question is what are the consequences of his failure in view of the course of conduct he pursued? The right to sue the surviving partner for an accounting continues so long as the surviving partner enjoys possession of the partnership property and its proceeds, and no statute of limitation begins to run against the right to sue for an accounting so long as the surviving partner does not repudiate the trust. McPherson v. Swift et al., 22 S. D. 165, 116 N. W. 76; Riddle v. Whitehill, 135 U. S. 621, 10 S. Ct. 924, 34 L. Ed. 283.

The second proposition is that the heirs of a deceased partner cannot enter into a new partnership with the surviving partner with respect to the partnership property until the administration proceedings have been closed. In Lyons et al. v. Lyons et al., 118 Okla. 113, 76 P. 2d 892, it is held:

"The surviving partner, upon the death of the other member of the partnership, is required to settle the affairs of the partnership without delay, and account to the executor or administrator for any funds due the estate of the deceased after the liquidation of the partnership. *Held,* that the right to require the settlement of the partnership affairs and to demand an accounting of the funds due the estate of the deceased partner is in the executor or administrator of the deceased partner alone."

Therein is cited Somerville v. Somerville, 118 Okla. 259, 247 P. 389, where it was held that the widow of a deceased partner could not maintain an action in her own name on a note given to her by the surviving partner in an apparent effort to liquidate or settle the interest of deceased partner in the partnership property. Robertson et al. v. Burrell, 110 Cal. 568, 42 P. 1086, held that an heir of a deceased partner cannot sue the surviving partner for an accounting, before distribution of the

estate has been made, since the right and power to maintain the action is in the executor or administrator alone. The reason is plain. The title and right of possession to the partnership property vests in the surviving partner in trust, and he must account to the executor or administrator. The heir though he may inherit an interest in the partnership property, it must come to him by accounting to the administrator and final distribution in due course of administration of the estate of the deceased partner. Until this is done, the heir has no right to possession or control of any of the property.

There are cases which hold that where the estate of the deceased partner has been settled and distribution made without an accounting by the surviving partner, the heir may then maintain an action for such accounting. The reason is that the heir is then entitled to possession and control of the property distributed to him. From the above rule, it would appear that the heir of a deceased partner would have no power to enter into a partnership with the surviving partner involving the property belonging to the original partnership.

Defendant in support of the finding and decree cites 20 R. C. L. 990, § 226, where it is said:

" Where one partner dies and those interested in his estate are sui juris, they may agree with the surviving partners to permit their inherited shares in the firm property to continue to be used by the partnership. When this is done and the firm business is continued by the administrators under the old name, a new partnership is nevertheless created and formed."

The author cites Andrews v. Stinson, 254 Ill. 111, 98 N. E. 222; Ann. Cas. 1913B, 927; Walker v. Miller, 139 N. C. 448, 52 S. E. 125, 111 A. S. R. 805, 4 Ann. Cas. 601, 1 L. R. A. (N. S.) 157. Examination of those cases, however, will disclose a state of facts different from the facts in this case. Most of them are cases involving the right of third parties who extended credit to the business conducted by the surviving partner, or by him and the heirs or executors.

The general rule is that after a partnership is dissolved by the death of a partner, the surviving partner has no authority to continue the partnership business further than is necessary in order to wind it up, unless such authority is given by the terms of the partnership articles or some other agreement between the partners, or between the surviving partner and the personal representative of the deceased partner, or by the will of the deceased partner, or by the order of court. We find no authority for the surviving partner to put the property into a new partnership composed of himself and the heirs of the deceased partner. But persons who are not partners may hold themselves out as such and become liable as partners to third persons; this does not change their relation to each other.

As to LoRene Taliaferro Reirdon and Mary Byrd French, there is no evidence whatever tending to show that they knew defendant had not made the inventory required and appraisement required by 58 O. S. 1941, sec. 255. It is not shown that they or either of them took any part whatever in the conduct of the business after the death of their father. The record discloses that LoRene did not begin to purchase merchandise from the Reirdon Lumber Co. on credit until August 7, 1934. Mary Byrd French did not begin to make such purchases until September 3, 1934. This was nearly seven years after the death of their father. There is no evidence that they or either of them at any time during said time took any part in the conduct of the business. There is no evidence that they or either of them at any time claimed to be partners in the business or held themselves out as partners. It may also be suggested that Mary Byrd French, nee Taliaferro, was or may have been a minor at the time of the death of her father, and that she did not attain her majority until about 1934. The evidence is wholly insufficient to sustain the order and decree declaring

them to have entered into a new partnership.

As to B. N. Taliaferro and G. W. Taliaferro, individually and as heirs of D. B. Taliaferro, the record does not sustain the finding of the trial court that they became partners in the business. There is nothing whatever in the record tending to prove that they as individuals ever claimed to be or held themselves out as partners in the business. There is nothing in the record, aside from the claim that they purchased merchandise, etc., at cost or at reduced prices, to indicate that defendant ever claimed that they were partners in the business until this question of accounting arose.

It is asserted that they did purchase merchandise, etc., from the lumber company at cost, thus indicating that they were being treated as partners in the business. But this claim is not justified by the record. The record does not show that from time to time merchandise was sold to B. N. and G. W. Taliaferro at cost or at reduced prices. But that alone is insufficient to show that they were partners or that they claimed to be partners.

The third proposition is that the executors by acquiescence cannot create a partnership between the estate of a deceased partner and a surviving partner. This as a general proposition appears to be the general rule. Unless expressly authorized by statute, by an order of court, by the will of the deceased partner or by the terms of a partnership agreement, neither an executor nor an administrator has any authority or power to continue the estate of his decedent in the trade or business enterprise engaged in by him at the time of his death, except for the purpose of disposing of the stock in trade and other assets of the partnership in order to settle the estate or of disposing of the business as a going concern. 21 Am. Jur. 518-519, par. 255.

Conceding that the executor did consent to the continuation of the business and participated therein, all without authority of law, what is the penalty? He is charged personally with all the losses thereby incurred, without, on the other hand, allowing him the benefit of any profits he may make. 21 Am. Jur. 258; Western Newspaper Union v. Thurmond, 27 Okla. 261, 111 P. 204. When he is called upon to settle with the persons beneficially interested in the estate, they may hold him liable for the amount so used, or at their election take all the profits which the representative has made. 21 Am. Jur. 258. And according to the same authority the same penalty may be exacted of those who leave estates at the risk of business disaster by continuing to operate business ventures in which the estates are invested when they come into their hands. But we are not here dealing with a case where there was a loss, no one in this action is seeking to charge plaintiffs as executors or as individuals for any loss incurred by allowing the property to remain in business. In fact there were no losses. The books of defendant, though incomplete, show a net profit each year.

In this case the record fairly discloses that both defendant and the executors acted without authority of law in permitting the business to go on and in effect treating it as a continuing partnership with the executors assuming to act for or represent the interest of the estate in the business as a going concern.

Finally the surviving partner is called upon to account. He is not accountable to the heirs as such. He is to account to the executors and they in turn are to account to the beneficiaries of the estate. We think, under the circumstances, the trial court was justified in finding a continuation of the partnership with plaintiffs representing the interest of the estate and defendant representing his own interest. B. N. Taliaferro and George W. Taliaferro knew all the time how the business was being conducted. From time to time they were rendered statements showing in substance that defendant had charged their individual accounts and the account of

the estate off the books of the business and gave the estate credit therefor in the way of dividends. Not only that, but they apparently assented to the acts of defendant in charging the individual accounts of the two daughters of the estate and treating them as dividends paid. In other words, plaintiffs as executors in effect assumed the indebtedness of the two daughters and consented to take credit therefor as dividends paid. Since the rights of creditors are not involved, equity would appear to demand a full and fair accounting as though the partnership had been continued under proper authority.

Plaintiffs then contend that they may now elect between profits and the value of the share of the deceased partner at the time of his death plus interest, and that they elect to take the latter. Defendant asserts, however, that, conceding the right of election, plaintiffs first elected to take profits by casting their petition and prayer on that basis and may not by later amendment or by way of reply change their election so as to claim the other way.

We are inclined to the view that plaintiffs elected to take profits instead of interest when they commenced this action on that basis, and are bound thereby with one exception. If by the fault of defendant, proper books of account were not kept so as to render it impossible to make a full account, or in case such books were kept, and defendant fails or refuses to produce same, the plaintiffs are not bound by their first election and may then claim the return of the value of the estate at the time of the death of D. B. Taliaferro, plus interest. By reason of the peculiar circumstances of this case, they should be charged with what they bought from the firm on credit and that which they agreed to pay for their two sisters.

The uncontradicted evidence is that during the continuance of the business $773,384.64 had been deposited in the bank to the credit of the Reirdon Lumber Company. Defendant contends, and his witness testified, that over the same period the total amount of money received by the lumber company was $653,010.57. The difference is approximately $120,000. Plaintiffs apparently concede that all of these receipts as shown by the bank record were accounted for except about $30,000. An expert accountant was employed to audit the books and affairs of the company. He testified that from the books of account, etc., submitted to him and all that he was able to find, defendant had accounted for all but about $30,000. He also testified that the books of the company for a considerable period were not found; that the accounts had not been kept or that they had been lost or destroyed. He also testified that the system of bookkeeping used by defendant was such as to render it difficult, if not impossible, to ascertain accurately how the receipts of the company had been disbursed. Defendant makes no explanation except to say that the $773,384.64 did not represent gross sales. That gross sales or income was shown in certain income tax returns as $653,010.57. He does not attempt to show how the bank receipts showed more than $120,000 more receipts than gross sales made, except to say it is possible that much of the receipts or deposits in the bank may have been made up of money borrowed from the business, bad checks charged off, etc.

According to the expert accountant, after giving credit for all money borrowed, re-deposits of items charged back, etc., there still remained unaccounted for some $30,000. Defendant, having had complete charge of the affairs of the company and management of its business, should be able to account for this sum. He should be required to bring forth all his books of account, canceled checks, etc. When he does so and the evidence then shows defendant has fully accounted, plaintiffs should be held to their election to take profits. If he fails so to do, plaintiffs should be released from their original election and may elect to take the value of the partnership property as of the date of the death of D. B. Taliaferro. Perrin v. Lipper, 72 Mich. 454; Killifer v. McLain, 78 Mich. 249.

The fifth contention is that the court erred in finding and holding that the semiannual statements rendered by defendant to plaintiffs became "accounts stated" by failure to object within a reasonable time.

The general tendency is to deny the applicability of the rule with reference to accounts rendered becoming accounts stated by retention thereof without objection, as against administrators and executors. In Hatten v. Interocean Oil Co., 182 Okla. 463, 78 P. 2d 392, 116 A. L. R. 727, we held the rule not applicable to receivers acting under the authority and supervision of a court. In Schultz v. Morette, 146 N. Y. 137, 40 N. E. 780, application of the rule to executors and administrators was condemned. Therein the court said:

"It would subject the estates of decedents to great danger if mere silence of the executor should be regarded as an admission of a claim presented, and relieve the claimant from establishing it in the ordinary way, and put upon the estate the burden of affirmatively establishing mistake or error."

Application of the doctrine as applied to an administrator was condemned in Withers v. Sandlin, 44 Fla. 253, 32 So. 829.

Defendant cites a number of cases applying the rule where managing partners presented accounts to their partners. But in none of them did the relation of personal representative exist. Plaintiffs cite no case and we have found none applying the rule to a personal representative.

There is conflict in some of the statements appearing on their face. For instance one statement was rendered dated "12-25-1934" purporting to show the net worth of the business, after deducting all liabilities, including capital stock, to be $14,747.30. Another statement dated "12-28-1934," only three days later than the one above referred to, showed the net worth on that day as only $8,207.70. Total assets in the first statement were $29,961.79. In the second statement total assets show $23,130.97. No showing was made accounting for the difference.

There is manifest error in the judgment as to the property remaining in the estate at the date of trial. The uncontradicted evidence is that defendant sold all the tangible assets of the business on September 13, 1937, to Lampke and Obrien. The bill of sale is in writing and shows a cash consideration of $6,899.41. Defendant's statement showing receipts after September 12, 1937, shows proceeds of sale to Lampke and Obrien only $3,499.51. This appears to be the exact amount of the inventory of the lumber on hand September 12, 1937, as shown by exhibit 20 of page 97 of the case-made. The amount he should account for on that date is $6,894.41.

The trial court apparently took the statement as rendered as correct. Otherwise, there should have been approximately $3,399.90 more in cash on hand after deducting proper amount of expenditures after September 12, 1937.

Judgment reversed and cause remanded for further proceedings in accord with the views herein expressed.

OSBORN, BAYLESS, GIBSON, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., CORN, V. C. J., and HURST, J., absent.