**MUD PRODUCTS, Inc., a corporation, Plaintiff in Error,**

v.

**Marie GUTOWSKY and Chester E. Gutowsky, Executors of the Estate of Assaph (Ace) Gutowsky, deceased, Defendants In Error.**

No. 36088.

Supreme Court of Oklahoma.

Sept. 21, 1954.

Embry, Johnson, Crowe, Tolbert & Boxley, Ben L. Burdick, Oklahoma City, for plaintiff in error.

Brown & Verity, George L. Verity, Harry C. Marberry, Oklahoma City, for defendants in error.

O'NEAL, Justice.

The controversy here is whether certain drilling mud used in the drilling of an oil well located in Motley County, Texas between the months of October and December, 1950, was purchased from the Mud Products, Inc. by one Assaph (Ace) Gutowsky, individually, or by the Ace Gutowsky, Inc., a corporation.

The parties will be given their designation as they appeared in the trial court.

It is not in dispute that during the months of October, November and December, 1950, plaintiff delivered to the well site of No. 1 Waybourn Well in Motley County, Texas, quantities of drilling mud which was used in the drilling of said well. Neither the amount nor the price thereof is in dispute.

Plaintiff's suit is based upon an allegation that it sold and delivered the drilling mud to Assaph (Ace) Gutowsky, as an individual. The executors of the estate of Assaph (Ace) Gutowsky, deceased, contend

that the mud was purchased and used by the Ace Gutowsky, Inc., a corporation, in the drilling of said well, and that they therefore deny liability in behalf of the estate.

Several months after the transactions here involved, Assaph (Ace) Gutowsky, died, and the present defendants were appointed executors of his estate. Plaintiff presented its claim to the executors in the amount of $6,241.71, which claim was disallowed. The present action was tried to a jury which returned a verdict in favor of the defendants. Plaintiff's appeal alleges error in the proceedings, based upon the exclusion of competent and relevant evidence, as well as misdirections to the jury on questions of law.

A resume of the evidence adduced discloses that Mr. Warren, District Manager of Mud Products, Inc., met Assaph (Ace) Gutowsky at the well site in October, 1950. Mr. Gutowsky informed Warren that a Mr. Madden, the well contractor, was to furnish the first $500 worth of mud for the drilling of the well, and that Mr. Gutowsky would furnish the remainder of the mud required to complete the well. Warren advised Mr. Gutowsky that the plaintiff corporation would furnish four copies of each billing of mud delivered, and that these copies were to be signed by a representative of the drilling contractor when deliveries were made and one copy of each billing would be left at the well for the operator thereof.

The record discloses that between the months of October and December, 1950, plaintiff mailed to Assaph (Ace) Gutowsky, at McAllen, Texas, 29 separate copies of invoices of mud delivered which indicate the following:

Charge To: A. Gutowsky

Lease Name: Waybourn

Invoice To: A. Gutowsky

Ordered By: Madden (Madden, the drilling contractor)

That after the well was completed in the month of December, 1950, Warren telephoned Ace Gutowsky at McAllen, Texas to inquire whether he had received the delivery tickets or invoices, and whether the services rendered by the plaintiff were entirely satisfactory. To this inquiry Assaph (Ace) Gutowsky informed Warren that the services rendered by the plaintiff were satisfactory, and that he would make payment for the mud delivered in the near future.

Defendants established by cross-examination of the witness, Warren, that a Mr. McDonald, area sales representative for the plaintiff corporation, had solicited the mud contract for the well from a Mr. Finley, a representative of Gutowsky, employed at the well site.

John B. Harlow, secretary-treasurer of the plaintiff corporation, in charge of its Tulsa, Oklahoma office, identified Exhibit "B" as the original ledger sheet of accounts receivable reflecting the account of A. Gutowsky, and testified that the account was made up from the delivery tickets or invoices for mud delivered to the well; that 12 separate copies of the account were mailed to Ace Gutowsky, which account represented the balance due for mud delivered on September 22, and for the months of October, November and December, 1950. At this stage of the trial plaintiff offered to establish by the testimony of the witness, Harlow, that he made several long distance telephone calls to Mr. Gutowsky of McAllen, Texas with reference to the payment of the account. The record discloses the following:

"Q. Now, Mr. Harlow, did you have occasion to call Mr. A. Gutowsky, Senior, regarding the payment of this account?

"A. Yes, sir.

"By Mr. Verity: Now, your Honor, we object to that and ask that the answer be stricken; and, on this objection, we are objecting to the competency of this witness to testify to any conversation that he had with a deceased person.

"By The Court: Are you a stockholder in this Company? Witness: Yes, Sir.

"By The Court: The objection will be sustained."

Plaintiff thereupon offered records indicating long distance telephone calls by

the plaintiff's Tulsa office to Mr. Gutowsky at McAllen, Texas upon the following dates: January 18, January 29, February 8, February 21, and March 16, 1951, and upon which dates Mr. Harlow discussed with Mr. Gutowsky the account in question, and that Mr. Gutowsky agreed to pay the same.

Objection to the competency of witness to testify was made by the defendants and sustained by the court. Whereupon, plaintiff made the following offer of proof:

"By Mr. Burdick: Comes now the plaintiff and objects and excepts to the ruling of the Court that Mr. Harlow be not allowed to testify to conversation had by telephone to Ace Gutowsky; and shows to the court that plaintiff will prove, if permitted, and that such witness would testify, if permitted, that on January 18, January 29, February 8, February 21 and March 16, 1951, he placed calls to Ace Gutowsky at McAllen, Texas; and that he talked to Ace Gutowsky and enquired (sic) about the payment of this account; and that Ace Gutowsky told him that he would pay him; and to not worry about the collection of the account; and that he had certain deals he expected to be closed in the near future which would allow him to make a cash payment; and, at no time, did Ace Gutowsky deny the purchase of the material, nor the manner of it's billing, nor the party to whom it was billed; and that the reports of these long distance calls were kept under the supervision and direction of Mr. Harlow who made the calls; and that Mr. Harlow would testify that said long distance phone book record is correct and that the dates shown, as stated above, are the dates on which calls were placed and such conversation had."

Defendants objected to the offer of proof which objection was sustained by the court upon the ground that the witness was incompetent to testify to said transaction, by reason of the provisions of Title 12 O.S. 1951 § 384. That section reads:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; nor shall the assignor of a thing in action be allowed to testify in behalf of such party concerning any transaction or communication had personally by such assignor with a deceased person in any such case; nor shall such party or assignor be competent to testify to any transaction had personally by such party or assignor with a deceased partner or joint contractor in the absence of his surviving partner or joint contractor, when such surviving partner or joint contractor is an adverse party. If the testimony of a party to the action or proceeding has been taken, and he afterwards die, and the testimony so taken shall be used after his death, in behalf of executors, administrators, heirs at law, next of kin, assignee, surviving partner or joint contractor, the other party, or the assignor, shall be competent to testify as to any and all matters to which the testimony so taken relates."

Defendants seek to sustain the court's ruling on the theory that the witness, Harlow, secretary-treasurer of the plaintiff corporation, was a stockholder in plaintiff's corporation and a party to the suit, and that under the terms and provisions of Title 12 O.S.1951 § 384, he was an incompetent witness. We are of the view that the court's ruling was erroneous and deprived plaintiff of a fair opportunity to establish the theory of the cause of action alleged. Assuming that Harlow had an interest in the outcome of the litigation, that interest being based upon stock ownership, that fact did not make him an incompetent witness under Title 12 O.S. 1951 § 384, for the reason Mr. Harlow was not a party to the action within the meaning of said section of the statute. Neither

was the witness incompetent under Title 12 O.S.1951 § 381, as his interest, if any, would go only to his credibility, and not to his competency.

 In M. T. Smith & Son v. Gulf Production Corporation, 183 Okl. 598, 83 P.2d 861, 862, we held:

"Only one who is a party to a court action is prohibited by section 271, O. S.1931, 12 Okl.St.Ann. § 384, from testifying concerning transactions and communications had with a deceased person in the circumstances therein named."

Defendants, in their brief, admit that Mr. Warren, the District Manager of the plaintiff corporation, who owned no stock in the plaintiff corporation, was a competent witness under the terms of sec. 384 of Title 12 O.S.1951, but contend that Mr. Harlow, the secretary-treasurer of the plaintiff corporation, by reason of his stock ownership, was an incompetent witness under said section of the statute. The argument is based solely upon the contention that Mr. Harlow, by reason of his stock ownership, was a party to the action, and thereby barred under the quoted section of the statute.

In the First National Bank of El Reno v. Davidson-Case Lumber Co., 52 Okl. 695, 153 P. 836; Abraham, Executor v. Stewart Bros. Cotton Co., Inc., 165 Okl. 73, 24 P.2d 992; Chickasha Compress Co. v. Southern Burner Co., 159 Okl. 107, 14 P.2d 367 and M. T. Smith & Son v. Gulf Production Corporation, supra, we pointed out that a manager and agent of a corporation was not an incompetent witness under Title 12 O.S.1951 § 384.

 We are of the view, and so hold, that the representative of the plaintiff corporation, whether his title is that of manager or agent, or that of secretary-treasurer, irrespective of his incidental stock ownership, is not a party to the action within the meaning of sec. 384, supra; therefore, the exclusion of the testimony offered deprived plaintiff of a substantial right under the circumstances here presented. State Bank of Wheatland v. Bagley Bros., 44 Wyo. 244, 11 P.2d 572. See also 163 A.L.R. 1217 and 58 Am.Jur., Witnesses, § 313, p. 191. Shawnee State Bank of Topeka v. Royal Union Life Ins. Co. of Des Moines, Iowa, 1929, 127 Kan. 456, 274 P. 132; Taylor v. American Home Life Ins. Co., 1933, 137 Kan. 862, 22 P.2d 459.

We cannot agree with defendants further contention that if the testimony of the witness, Harlow, was improperly excluded, that the ruling was harmless error.

Defendants, by answer, specifically denied that the drilling mud was furnished to Ace Gutowsky, Inc., a corporation. Defendants further plead that Ace Gutowsky, did not agree to pay for the drilling mud.

Thus the pivotal question presented was whether Assaph (Ace) Gutowsky did or did not enter into the oral contract plead and relied upon by the plaintiff.

For the reasons given, the case is reversed, with instructions to grant plaintiff a new trial.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, DAVISON and WILLIAMS, JJ., concur.