I. P. CLARK, Jr., Jack Clark, Daniel J. Clark and I. P. Clark, Jr., as trustee, Plaintiffs in Error,

v.

E. C. ADDISON, Defendant in Error.

No. 36756.

Supreme Court of Oklahoma.

May 14, 1957.

Windham & Windham, Poteau, Shaw, Jones & Shaw, Fort Smith, Ark., for plaintiffs in error.

Kelly Brown, Muskogee, H. Duane Stratton, Oklahoma City, for defendant in error.

PER CURIAM.

This is an appeal from a judgment of the District Court of LeFlore County in favor

of the defendant in error, one of the defendants in the trial court. The plaintiffs in error are the heirs of one I. P. Clark, Sr. They joined with other parties plaintiff seeking relief with resect to certain real property in LeFlore County.

The action was brought by A. C. Dunklin, individually and as executor of the estate of W. B. Dunklin, deceased, and plaintiffs in error. The judgment of the trial court disposed of the claims of all parties both plaintiff and defendant except as here involved. The nature of the action brought by the plaintiffs as a whole and the issues raised by the pleadings as between all plaintiffs and defendant in error as a defendant and cross-petitioner are material to the issues on this appeal.

By their petition plaintiffs claimed ownership of a large tract of land, asserting the property to be then owned, an undivided ⅓ interest in A. C. Dunklin, together with an undivided ⅓ interest as executor of the estate of W. B. Dunklin, deceased, and an undivided ⅙ interest each in plaintiffs in error, totaling the remaining ⅓. It was alleged that Bryan Dunklin, the same person as W. B. Dunklin, acquired title to the property by tax deeds. That after the death of W. B. Dunklin and I. P. Clark, Sr., the interests originally acquired on a basis of ⅓ interest each to A. C. Dunklin, W. B. Dunklin and I. P. Clark, Sr., became vested in plaintiffs in the proportions then claimed. The allegations of the petition under the assertion of ownership as stated set out a cause of action to quiet title against all parties defendant by the usual general allegations as against the claims of all parties defendant. There was specific reference to the defendant, E. C. Addison, defendant in error, and one Roy Legris, also named a defendant, seeking injunctive relief against them from cutting timber on the land. Portions of the petition relating to determination of heirs, reforming deeds and general allegations affecting other parties defendant are not now material. The relief demanded included quieting of title in plaintiffs and partition.

The defendant in error, E. C. Addison, who will be referred to hereafter as defendant, filed a general denial and by cross-petition alleged that in February, 1941, he entered into an oral joint adventure agreement with I. P. Clark, Sr., Andrew Dunklin and Bryan Dunklin (the Dunklins so named are the same as A. C. Dunklin and W. B. Dunklin). That by the terms of the agreement Addison and Clark were to use their knowledge and experience in locating certain timber properties in LeFlore County and to make necessary investigations and institute proper procedure for purchase thereof through tax sales; that the purchase would be made in the name of Andrew Dunklin or Bryan Dunklin, who were to furnish the purchase money and pay taxes; that after purchase Addison and Clark were to look after the land, by paying taxes with the Dunklin funds and protecting the timber from theft; that the lands and timber thereon would be sold by the parties acting together; after sale the Dunklins would be reimbursed for money advanced, plus interest, and the profits divided ⅓ to Andrew Dunklin, ⅓ to Bryan Dunklin and ⅙ each to Clark and Addison. Defendant further alleged that the lands described in the petition were purchased by himself and Clark under the agreement and in accordance therewith; defendant acknowledged the death of Bryan Dunklin and I. P. Clark, Sr., and their heirs as alleged in the petition and plead that the interests in succession were impressed with the agreements and lien claimed by him and that such heirs and successors in interst had full knowledge of his claims; that there had been a disavowment and denial of the agreement after the death of the two parties of which defendant did not become aware until March, 1950; defendant's demand for relief included establishment of his claimed ⅙ interest in the profits, decree determining the record title to the property to be held in trust under the agreement and that after partition requested by plaintiffs, they be required to account for his share of the profits arising from sale.

After all parties plaintiff filed separate demurrers which were overruled, parties plaintiff then filed separate answers to defendant's cross-petition. The substance of which in addition to generally denying the allegations of the cross-petition raised issues as follows: defendant had failed to file a claim as a creditor of the estates of Bryan Dunklin and I. P. Clark, Sr., which was now barred by applicable statutes of limitation; that defendant's claim or cause of action is in violation of the statute of frauds and unenforceable; as further answer and by way of cross-petition the plaintiffs alleged that defendant had converted timber from the lands involved to their damage.

After the issues were drawn on the pleadings, by agreement of the parties, the first judgment was entered in the case expressly reserving therefrom the issue and prayer of plaintiffs in their petition for partition and the issues as between the parties on the cross-petition of defendant and responsive pleadings thereto, all of said issues to be subsequently determined. Title was quieted in plaintiffs and it was further provided that, if and when the property was sold 1/3 of the proceeds therefrom be paid into court pending the determination of the remaining issues.

Subsequent to the entry of this judgment the parties entered into a stipulation approved by the trial court whereby it was agreed that the sum of $7,743.47 was the proper net amount realized from the sale of the property to be paid into court and out of which distribution might be made in satisfaction of the remaining issues of the case.

The trial on the issues reserved from the first judgment was before the court without a jury. From the judgment entered awarding defendant one-half of the money deposited in court, plaintiffs in error appeal.

It was the position of all parties plaintiff and the defendant that the property was purchased at tax sales under a joint agreement and title taken in the name of Bryan Dunklin to be held by him for the benefit of the contracting parties. The only controversy arises over the question as to whether or not the defendant together with I. P. Clark, Sr., or Clark alone, was to share in the transactions to the extent of a 1/3 interest for services rendered. It was not disputed that the Dunklins supplied the finances and were to share the 2/3rds interest.

Under the issues thus joined defendant presented testimony and certain written instruments in support of his contentions. In substance his proof was as follows: Defendant testified that pursuant to a preconceived plan with I. P. Clark, Sr., the two met with the two Dunklins and the four parties entered into the agreement according to the terms which were plead in defendant's cross-petition; that in accordance with the agreement he and Clark assisted in the purchase of some 3177 acres of land of which the lands subject to the action were a part; that he had performed various services in connection with the acquisition and care of the property so purchased and held, all within the knowledge and under the direction of the Dunklins. Defendant also produced the testimony of one Ferne Fields employed in defendant's office as secretary during the period defendant and Clark had engaged in their services in connection with the purported agreement with the Dunklins. Her testimony was, in substance, that Clark and defendant had discussed in her presence the proposed project of securing finances to purchase the land and were going to the Dunklins to solicit financial aid; that Clark and defendant proceeded toward the purchase of timber land at tax sales and procured some 3177 acres; that she made plats of the land to be purchased and purchased and had written letters and various memoranda and maintained files containing various instruments of this nature, which she produced from the files; that Clark and defendant were working together in the matter and the records were written and kept by her for both in connection with their joint efforts; that Clark and defend-

ant stated in her presence that the two had the agreement with the Dunklins according to the terms claimed by defendant and that each was to receive one-half of the one-third interest. The records from the files with few exceptions were admitted in evidence; the records so produced strongly corroborated defendant's testimony. Another witness from a local bank established the fact that for a few years prior to Clark's death, defendant and Clark maintained a joint account in a bank and there was some further corroboration of defendant's testimony in that Bryan Dunklin had inquired as to defendant's knowledge of timber land and that he, Bryan Dunklin, was interested with defendant in some timber land holdings.

From a careful review of the testimony and exhibits offered on the part of defendant we find as a whole such are ample, if properly accepted and believed, to sustain defendant's contention that he was a party to an agreement as testified to by him with the Dunklins and Clark and had made full compliance with his agreement.

Andrew Dunklin testified that defendant had no part in the transaction and that Clark, Sr., alone was, under the agreement, to perform the services and share with the Dunklins. There was other evidence produced on the part of plaintiffs in error, all of which tended to prove that defendant was not a party to the transaction.

Plaintiffs in error here urge that defendant's cross-petition was not properly incorporated in the action, did not state a cause of action and the judgment was not sustained by competent evidence and that defendant's claim was barred because not filed in the estate proceedings of the two deceased persons.

■ Plaintiffs' petition was such that if they had prevailed, defendant would have been barred from any claim to the property. By his cross-petition defendant plead the manner of acquisition of the property and his participation in the alleged agreement for the purchase and disposition thereof. According to the conten-

tions of both plaintiffs and the defendant the agreement entered constituted a joint adventure. Sand Springs Home v. Dail, 187 Okl. 431, 103 P.2d 524. The action as brought by plaintiffs and the issue raised by defendant were matters properly within the "equitable jurisdiction" of the court, both from a standpoint of quieting title and accounting between the parties. We think that parties plaintiff and defendant were entitled to a determination by the court as to the true ownership of the property and the proper distribution thereof or its proceeds in an accounting. All issues thus raised being within the equitable jurisdiction of the trial court, there was an incumbent duty upon the court to hear the matter fully and render judgment in favor of the party entitled thereto. Hoge v. Hammonds, 192 Okl. 145, 134 P.2d 559. We find nothing improper in the pleadings and that there was no error in the method of procedure followed by the court.

■ Where property is acquired in a joint adventure it is not material in whose name the title is taken, since the one holding the title will be regarded as trustee for his associates. Ferguson v. Nagle, 159 Okl. 219, 15 P.2d 1. Property acquired in a joint adventure becomes the joint property of all the parties. Ferguson v. Nagle, supra; Cassidy v. Gould, 86 Okl. 217, 208 P. 780; Cassidy v. Hornor, 86 Okl. 220, 208 P. 775.

■ The members of a joint adventure have the powers and interests of partners in the disposition of property involved in the enterprise and the same general rules apply to both joint adventures and partnerships in dissolution and accounting between the parties. Boles v. Akers, 116 Okl. 266, 244 P. 182; Dobbins v. Texas Co., 136 Okl. 40, 275 P. 643. It cannot be said that the title to the property was vested in the estates of either of the two deceased joint adventurers. There was rather a claim by the representatives of each estate in accounting from which the amount realized in liquidation of the adventure might be determined and paid into the estate proceedings. State ex rel. Reirdon v. County

Court of Marshall County, 183 Okl. 274, 81 P.2d 488; Taliaferro v. Reirdon, 191 Okl. 43, 126 P.2d 696; Ferguson v. Nagle, supra.

Plaintiffs in error contend that the court erred in permitting E. C. Addison to testify as to conversations and agreements had by him with I. P. Clark, Sr. and W. B. Dunklin, both of whom were deceased at the time of the trial. In the present action the heirs and legal representatives of these deceased parties were parties plaintiff, along with A. C. Dunklin who was a living member of the joint adventure.

E. C. Addison was permitted to testify that the joint adventure agreement for the acquisition and handling of the timber lands involved was entered into in the bank of the two Dunklins at Spiro, Oklahoma, where he and I. P. Clark, Sr. had gone, after the Dunklins had previously agreed with I. P. Clark, Sr. to furnish the necessary money to buy the land and pay all expenses accruing in holding the land and disposing of it; that the Dunklins were to be reimbursed in full before any profits were to be divided, 1/3rd to each of the Dunklins and 1/6th each to I. P. Clark, Sr. and E. C. Addison. The Dunklins were to have the right to fix all selling prices; and that I. P. Clark, Sr. and E. C. Addison were to locate the land and perform all services necessary to the acquisition, preservation and disposition of the land, and share equally in 1/3rd of the net profits.

Andrew, or A. C. Dunklin, the surviving member of the joint adventure, admitted that I. P. Clark, Sr. and E. C. Addison had been in Spiro together, but denied that E. C. Addison was to share in the net profits of the joint adventure.

This action to quiet title was filed by A. C. Dunklin, individually and as executor of the estate of W. B. Dunklin, deceased, and the heirs and trustee of I. P. Clark, Sr., deceased, and is clearly an action to quiet title in the plaintiffs as against all defendants named. All defendants were alleged to be claiming some right, title or interest in the land, alleged to be owned by and in the possession of plaintiffs, and prayed that all claims of defendants be barred and the title of plaintiffs quieted.

While it is true that it was alleged E. C. Addison and another defendant had wrongfully removed timber from the land, and prayed that they be enjoined from further taking timber and be required to pay for what had been taken, E. C. Addison was not excluded from claiming an interest in the land.

The objection to the testimony of E. C. Addison is based upon Section 384, 12 O.S.1951, commonly referred to as the "Dead Man's Statute." The applicable portion of that statute is as follows:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; nor shall the assignor of a thing in action be allowed to testify in behalf of such party concerning any transaction or communication had personally by such assignor with a deceased person in any such case; nor shall such party or assignor be competent to testify to any transaction had personally by such party or assignor with a deceased partner or joint contractor in the absence of his surviving partner or joint contractor, when such surviving partner or joint contractor is an adverse party. * * *"

Does this statute apply to the testimony of E. C. Addison? It will be noted that it prohibits a party from testifying as to transactions had with a deceased party,

"* * * where such party has acquired title to such cause of action immediately from such deceased person; * * * nor shall such party or assignor be competent to testify to any

transaction had personally by such party or assignor with a deceased partner or joint contractor in the absence of his surviving partner or joint contractor, when such surviving partner or joint contractor is an adverse party. * * * "

A. C. Dunklin is a surviving partner or joint contractor of the two deceased parties. A. C. Dunklin is an adverse party to E. C. Addison, whose testimony is positive that the two Dunklins and I. P. Clark, Sr. and E. C. Addison were all present when the final agreement was reached. At no time did E. C. Addison testify as to a joint adventure contract with one of the deceased parties in the absence of the surviving members. He testified that the agreement was made at Spiro when all four of them were present and made the agreement.

Was the testimony of E. C. Addison forbidden by the above statute on the ground that he acquired his claim or cause of action "immediately" from either of the deceased parties? He could not sue until the termination of the joint adventure agreement because it was only then that it could be determined whether there would be any net profits after the Dunklins had been fully reimbursed for all monies paid out by them. We think the right of E. C. Addison to sue was acquired from the plaintiffs in this action rather than from the deceased parties.

When the joint adventure agreement was terminated and the claim of E. C. Addison was denied by the surviving Dunklin and the successors of the two deceased members then the cause of action accrued to E. C. Addison, and it cannot be reasonably contended that he obtained his cause of action immediately from either of the deceased parties. The claim of E. C. Addison was here asserted by him as a defense to the action commenced and asserted by the plaintiffs.

In Mike v. Gidney, 195 Okl. 472, 159 P. 2d 240, it is announced in the syllabus as follows:

"The inhibition provided under 12 O.S.1941 § 384 is against the party who has acquired title to the cause of action immediately from the deceased person, when he becomes a witness and offers to give testimony in respect to any transaction or communication had personally with the deceased."

The rule above quoted is repeated in Preston v. Berry, 205 Okl. 63, 234 P.2d 417.

In the recent case of Clammer v. Fullerton, Okl., 259 P.2d 823, 826, the administrator, in his final report and petition for distribution, sought to charge certain sums against the share of Mrs. Clammer, one of the heirs. Objection was made to her as a witness as to charges sought to be made against her share of her father's estate. This Court held that Section 384, supra, was not applicable, and said in part:

"In the case at hand, respondent does not occupy the position of one who 'has acquired title to the cause of action' from the deceased person. As a matter of fact, she was not even asserting a cause of action, but was only trying to defend herself against one."

In the Missouri case of Fulkerson v. Thornton, 68 Mo. 468, is found a very reasonable discussion of the reason for the rule announced in Section 384, supra. It is in part as follows:

"* * * The reason of the statutory prohibition, is the prevention of one person testifying where death has sealed the lips of his adversary; a reason which cannot possibly apply where there are other persons, still alive, who were co-contractors with the decedent, cognizant of all the facts as well as he was, able, therefore, to testify in opposition to the testimony of the witness objected to as being incompetent because of death of one of the co-contractors. As the reason for the rule does not exist, no more does the rule."

The same rule is announced in Homewood Dairy Products Co. v. Robinson, 254

Ala. 197, 48 So.2d 28, 22 A.L.R.2d 1059, and a large number of cases are discussed from various states, where the rule above announced is approved.

■ The rule is clearly established that only one who is a party to an action is prohibited from testifying by Section 384, supra, as announced in Mud Products, Inc., v. Gutowsky, Okl., 274 P.2d 389, and cases therein cited. The witnesses, Minnie A. Allen, Albert H. Moore and Ferne Fields were not parties to the action and had no interest in the outcome. We believe that their testimony, when considered in connection with the exhibits introduced from the Addison-Clark files, is sufficient to sustain the judgment of the trial court.

We have examined all of the exhibits. Exhibit 9 is a letter from W. B. Dunklin, dated July 14, 1942, and asks Addison to investigate a proposed purchase of certain land and advise Mr. Dunklin what to do about making the purchase. Mr. Dunklin asked E. C. Addison to investigate the records and determine for sure in whose name title stands and closes with these words " * * * if you think best we can go ahead and take up the matter with Mr. Harris."

Exhibit 10 is a letter dated July 28, 1942, from Addison to I. P. Clark, Sr. which is as follows:

> "Mr. Dunklin finally got the approval on the balance of the land (1440A), in Township One North, I met him in Poteau last week and he and I made out a plat and he recorded his deeds. I believe this makes 3200 acres which we now own in the deal."

While the point is not discussed in the briefs, it seems strange that E. C. Addison would devote his time and knowledge in the field of timber land to the project involved here for no consideration whatever. There is no claim that he was ever paid one cent for his services. He did not have the cash to buy the tax title land involved and he and I. P. Clark, Sr. persuaded the Dunklins to put up the cash and bear the expenses. We cannot conceive of a man in E. C.

Addison's circumstances agreeing to work over the years with no agreement to share in the hoped for profits of the joint adventure.

■ The basic issue was whether defendant was in fact a party to the joint adventure. There is a specific finding incorporated in the judgment that he was. The trial court was the trier of the facts. The credibility of witnesses and the effect and weight to be given to conflicting or inconsistent testimony are questions of fact to be determined by the trier of the facts, whether court or jury, and are not questions of law for this Court on appeal. Plumer v. Pearce, 208 Okl. 526, 257 P.2d 813; Payne v. Wade, 190 Okl. 222, 122 P.2d 144.

■ Under the facts of this case, as determined by the trial court, it cannot be said that defendant's claim was one against either of the estates of the deceased joint adventurers, hence the contention of plaintiffs in error that a claim should have been filed against both estates or either of them is without merit.

There being no error the judgment of the trial court is affirmed.

CORN, V. C. J., and HALLEY, JOHNSON, BLACKBIRD and CARLILE, JJ., concur.

WELCH, C. J., and DAVISON, WILLIAMS and JACKSON, JJ., dissent.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner J. W. Crawford and approved by Commissioners James H. Nease and Jean R. Reed, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.

WELCH, Chief Justice (dissenting).

I think the majority opinion is in error in the announced rule that in such a case as this a party may testify as to transaction

and communication had personally by such party with a deceased person when the party so testifying here is in effect maintaining an action against the heirs of the deceased person with whom this party claimed to have had an oral agreement which forms the basis of this party's claimed right to recover.

It seems to me that the facts stated in the majority opinion demonstrate that there is application here for the statute 12 O.S.1951 § 384 which prohibits a party himself from testifying to transactions and communications had personally with a deceased person. That statute sets out the circumstances under which the statute applies, and I think those circumstances are here present.

I am authorized to state that DAVISON, J., concurs in these views.