IN RE THE MARRIAGE OF MITCHELL



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE THE MARRIAGE OF MITCHELL

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE THE MARRIAGE OF MITCHELL
2021 OK CIV APP 17
491 P.3d 759
Case Number: 117462
Decided: 04/02/2021
Mandate Issued: 04/28/2021
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2021 OK CIV APP 17, 491 P.3d 759

 

IN RE THE MARRIAGE OF:

JOYCE A. MITCHELL, Petitioner/Appellant,
v.
RICHARD G. MITCHELL, Respondent/Appellee.

APPEAL FROM THE DISTRICT COURT OF
DELAWARE COUNTY, OKLAHOMA

HONORABLE BARRY V. DENNEY, TRIAL JUDGE

AFFIRMED

George Wm. "Billy" Wiland, III, Tulsa, Oklahoma, for Petitioner/Appellant

Bobby C. Ramsey, DAVIS & THOMPSON, PLLC, Jay, , for Respondent/Appellee

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Joyce A. Mitchell (Petitioner) seeks review of trial court orders finding her guilty of indirect contempt, sealing the court record, and awarding attorney fees and interest to Richard G. Mitchell (Respondent). The salient issues on appeal are whether the trial court erred in excluding evidence, in sealing the record, or in finding Petitioner guilty of contempt.[1] After review of the record and applicable law, we find no trial court error and affirm.

FACTS AND PROCEDURAL BACKGROUND`

¶2 A decree of divorce and dissolution of marriage filed April 27, 2012, memorializes the parties' agreement on the division of marital property. Key to our review is this provision:

a. The Parties' Business Interests in Four Seasons of Fun, LLC. Petitioner is awarded Four Seasons of Fun, LLC, a mobile home park (hereinafter referred to as the "Park"), including all assets belonging thereto.

i. The Petitioner currently has the South 7 acres of the park on the market for $700,000.00. Any lower offer must be agreed to by both parties in writing. Upon the sale of the property, after payment of the indebtedness of said property, including capital gains, costs and fees, the profit shall be divided 50% - 50% and/or a maximum of $150,000.00 for the Respondent, and the Petitioner shall receive the remaining funds. Respondent shall be paid at closing.

In the event that the property does not sell within the next eight (8) years and the current mortgage is paid in full, the Petitioner shall pay the Respondent the sum of $150,000.00 payable in monthly payments of $3,000.00 per month for fifty (50) months with no interest thereon. Payments will begin August 15, 2020.

¶3 Other property, real and personal, was also divided as agreed by the parties. Respondent appears to have been unrepresented by counsel as the Decree is approved only by Petitioner's attorney, John M. Weedn.

¶4 On November 23, 2016, Respondent filed an application for a temporary restraining order stating that he had discovered that a closing had occurred on the sale of Four Seasons of Fun, LLC, the mobile home park in Grove, Oklahoma, on October 18, 2016, and that the sale violated the terms of the Decree because the sales price was $500,000 and Petitioner failed to notify Respondent about the contract for sale or the closing. Respondent asked the Court to direct Petitioner to deposit $150,000 into his attorney's firm's trust account and to require Petitioner to reimburse him for the fees associated with his request. The trial court granted a temporary restraining order prohibiting Petitioner from disposing of the funds from the sale of the Park and ordering her to immediately deposit $150,000 to the trust account of Respondent's attorney's firm.

¶5 In an order filed on January 10, 2017, the trial court concluded after the November 30, 2016, TRO hearing that "the Petitioner was deceitful as it pertained to communications with the Respondent regarding the sale of Four Seasons Park." The court again ordered Petitioner to place $150,000 in the trust account.

¶6 That same day, an order was filed stating: "Now on 10 day of Jan, 2017, the Court Orders that the enclosed file, dated the 10 day of Jan, 2017, is sealed pending further Order of the Court. The Court further Orders that the District Attorney for the State of Oklahoma and counsel for the Defendant shall be allowed access." The court minute entry from that day states, "File to be sealed. Gag order issued re: any info on sale of Four Seasons MH Park."

¶7 On February 27, 2017, Respondent filed an application requesting the release of the funds or enforcement of the terms of the Decree. Petitioner objected, claiming a dispute over the amount of the sale proceeds to which Respondent was entitled.

¶8 On May 10, 2017, Respondent filed an application for contempt citation asserting Petitioner failed to comply with the terms of the Decree, and the court set a hearing for May 19, 2017. Petitioner entered a plea of not guilty on that date. On June 23, 2017, Respondent filed an amended application for contempt substantially similar to the original application.

¶9 According to a minute entry on August 18, 2017, the trial court granted the motion filed by Respondent's attorney to disqualify Petitioner's attorney, Winston Connor. Subsequent filings show Petitioner engaged a different attorney.

¶10 On August 24, 2018, Respondent filed an application for attorney fees and costs.

¶11 In an order filed on September 17, 2018, the trial court found Petitioner guilty of indirect contempt because (1) she sold the Park for $500,000 without Respondent's approval or knowledge, and (2) she closed on the sale of the Park on October 18, 2016, but failed to notify Respondent about the closing until November 17, 2016. The court awarded Respondent $150,000 plus interest. The court said, "The Petitioner can purge herself of the contempt by paying the interest due and owing to the Respondent in the amount of $17,004.78, on or before the 26th day of October, 2018, at 9:00 o'clock a.m." On September 21, 2018, the court ordered Petitioner to pay Respondent $7,241.64 in attorney fees and costs.

¶12 Petitioner appeals the contempt order and the order awarding attorney fees and costs.

STANDARD OF REVIEW

¶13 "The admissibility of evidence and the conduct of a trial are matters within the sound discretion of the trial court." James v. State Farm Mut. Auto. Ins. Co., 1991 OK 37, ¶ 22, 810 P.2d 365.

¶14 In contempt proceedings, "The standard of review is clear . . . questions of fact will not be reviewed." Kerr v. Clary, 2001 OK 90, ¶ 18, 37 P.3d 841. We confine our review to questions of law which we examine de novo. See Southon v. Oklahoma Tire Recyclers, LLC, 2019 OK 37, ¶ 4, 443 P.3d 566.

ANALYSIS 

1. Disqualification of Counsel, Exclusion of Evidence, and Sealing the Record

A. Disqualification of Counsel

¶15 In her brief in chief, Petitioner states that Winston H. Connor's "firm represented both parties in the divorce proceeding." She claims that during the negotiation process for the sale of the Park, Connor agreed to discuss the sale with Respondent. She asserts the trial court erred by removing Connor as her attorney, sealing the record, and determining that Connor's testimony regarding the negotiations was irrelevant. She claims she was prejudiced by these decisions.

¶16 Specifically, in her brief in chief, she claims error in that "her initial attorney was 'disqualified' from the proceedings and prevented from putting on evidence tending to establish good faith compliance in the sale of the property and distribution of profits consistent with the Divorce Decree." She claims there was testimony that Respondent knew of the pending sale of the property and there was evidence regarding the distribution of proceeds, but that information was not "known to or available to Petitioner Appellant's attorney herein during the time of the trial on the contempt charge," allegedly due to the "gag order."

¶17 The reasoning behind the trial court's decision to disqualify Petitioner's attorney is unclear. Petitioner argued that the firm represented both parties in the divorce proceedings and was also involved in transmitting details of the offer to Respondent. Without more information, we are left to speculate about the trial court's reasoning. "Legal error may not be presumed in an appellate court from a silent record. The opposite is true. Absent a record showing otherwise, this court presumes that the trial court did not err." Hamid v. Sew Original, 1982 OK 46, ¶ 6, 645 P.2d 496. We see no abuse of discretion in this decision.

B. Exclusion of Evidence

¶18 Petitioner asserts that "the trial court erred in not allowing testimony and evidence favorable to Petitioner." "[T]he settled rule is that only those errors in admission or rejection of evidence which resulted in miscarriage of justice or constitute substantial violation of some constitutional or statutory right require reversal of a cause by this Court." Davon Drilling Co. v. Ginder, 1970 OK 51, ¶16, 467 P.2d 470. For the most part, Petitioner does not dispute Respondent's version of events, but has a different interpretation of those events and argues that she was prevented from "putting on evidence tending to establish good faith compliance in the sale of the property and distribution of profits consistent with the Divorce Decree."

¶19 Although in her brief in chief Petitioner appears to assert that the trial court erred in not allowing her initial attorney to testify, she asserts in her reply brief, "Appellant's contention is not that the trial did not allow evidence at the trial conducted on August 21, 2018, but that counsel for Appellee in concert with the trial court deprived Appellant access to evidence." She claims that, although Respondent denied that Petitioner communicated with him about a pending sale or negotiations, Respondent in fact agreed at the November 30, 2016, hearing that his statement to the court about the communication was misleading.

¶20 In support, Petitioner quoted this testimony from Respondent in her brief in chief:

Q: Okay. Did you receive any notification that there was a half-a-million-dollar offer on the table?

A: No.

(Transcript of proceedings 11/30/16. Record p.113) [p.14 - Ln 19-21].

Upon Cross Examination by Mr. Brewer to Respondent Mr. Mitchell:

Q: Sir, listening to your testimony it sounds like you're saying that you had no notice that there were offers pending on this property and a potential transaction looming? Is that what you're leading this Court to believe? Yes or no.
A: Ask that again, please.
Q: Did you have any notice that there were--
A: No.
Q: --potential transactions looming on the sale--
A: No.
Q: --property? Do you recall a call from our office from Mr. Connor advising you of a potential offer and transaction that was in the works? Do you deny that--
A: A potential offer, yes.
Q: So then you had some notice that there were--that there was a deal in the works--
A: I--I felt there was something up, yes.
Q: Okay. Can you see how your earlier statements might have misled the Court to believe that you had no notice that there was anything happening?
A: Yes.

¶21 Petitioner's counsel claims he only discovered this evidence after filing the appeal and ordering the transcript of the November 30, 2016 hearing. He claims that the TRO hearing took place on November 30, 2016, which does not appear on the docket sheet, and that at that hearing, the trial court issued a gag order sealing the file.[2] With a court reporter, the parties, and their counsel present at the November 30, 2016 hearing, it is difficult to conclude that Petitioner suffered prejudice by the omission of the hearing setting from the docket sheet.

¶22 The testimony Petitioner cites does not even remotely support a claim that Respondent had written or actual notice of the pending sale. It shows only that he had some oblique notice that a potential offer might be made in the near future.

¶23 The hearing testimony Petitioner cites likewise cannot reasonably be stretched to prove that Respondent agreed in writing to the sale of the property for less than $700,000 or that he was paid at closing, as explicitly required by the Decree's terms. The evidence shows that Respondent inquired by text message about whether a sale was pending and Petitioner told him on September 3, 2016, she was "waiting on an offer." On October 14, 2016, in response to Respondent's inquiry, she texted that there was "[n]o closing." Then on November 17, 2016, Petitioner texted him, "It's the 17th. Closed on the 17th." Respondent's counsel then asked him, "And would you agree that at least the closing documents indicate that it was closed a month before that?" and Respondent replied, "That's--yes."

¶24 The date on the real estate contract is not entirely legible and says either June 14, 2016, or July 14, 2016. The contract states the purchase price is $500,000. A counteroffer dated July 15, 2016, and signed by Petitioner provides that the buyer will pay half of Petitioner's closing costs, but "[a]ll other terms and conditions in the contract accepted by Seller."

¶25 Petitioner's testimony at the November 2016 hearing is confused and confusing, at best. Respondent claims the closing took place in mid-October 2016, but he was not notified until mid-November. Although Petitioner maintains she talked to Respondent about the sales price in October, she does not argue that she complied with the Decree's requirements to obtain his consent in writing to any offer under $700,000 or that she advised him in advance of the closing so that he could be present to receive his portion of the sales proceeds pursuant to the Decree.

¶26 Petitioner presented and argued her position on the issues to the trial court but was unsuccessful. From our review of the record, Petitioner has not persuaded us that the claimed exclusion of evidence here resulted in a miscarriage of justice or constituted a substantial statutory or constitutional violation mandating reversal of the trial court's decision.

C. Sealing the Record

¶27 Petitioner is correct that, as noted above, there is no docket entry for the hearing on November 30, 2016. But the entry of the TRO and the order to seal the case are clearly noted in docket sheet entries on January 10, 2017. The docket sheet also says, "File to be sealed. Gag order issued re: any info on sale of Four Seasons MH Park."

¶28 Based on the record before us, the order sealing the file does not comply to any degree with either the letter or spirit of the Oklahoma Open Records Act, 51 O.S. § 24A.1 et seq., in particular, § 24A.30 governing sealing court records. We will set out this section in its entirety:

All court records, as defined by Section 32.1 of Title 12 of the Oklahoma Statutes, shall be considered public records and shall be subject to the provisions of the Oklahoma Open Records Act, unless otherwise identified by statute to be confidential. If confidentiality is not required by statute, the court may seal a record or portion of a record only if a compelling privacy interest exists which outweighs the public's interest in the record. In all cases where the court is sealing a record or portion of a record, the court shall enter an order which shall be public and shall:

1. Make findings of fact which identify the facts which the court relied upon in entering its order;

2. Make conclusions of law specific enough so that the public is aware of the legal basis for the sealing of the record;

3. Utilize the least restrictive means for achieving confidentiality; and

4. Be narrowly tailored so that only the portions of the record subject to confidentiality are sealed and the remainder of the record is kept open.

51 O.S. Supp. 2019 § 24A.30 (emphasis added).

¶29 Parties may wish to keep information from the public eye, but courts are the gatekeepers of public confidence in the administration of justice tasked by the ORA with restricting access only to those public records deserving such privacy for the reasons to be stated by the trial court. Judicial records are subject to a presumption of public access, whether based on statute, common law, or First Amendment constitutional principles. See 51 O.S.2011 and Supp. 2019 §§ 24A.2, 24A.30; see Nixon v. Warner Commc'ns, Inc., 435 U.S. 589 (1978) (common law right of public access); Bernstein v. Bernstein, 814 F.3d 132 (2d Cir. 2016) (First Amendment right of access). Overbroad sealing orders without judicial oversight run counter to the public policy behind the ORA's mandate to allow public access in all but very limited situations, thus fostering public scrutiny of governmental actions and promoting public confidence in the courts.

¶30 As is frequently the case with such orders, we are given no explanation in the present case as to why "any info on sale of Four Seasons MH Park" requires court intervention to prevent public exposure. The record supports our conclusion that when measured against the ORA's restrictions, the order sealing the file is deficient in the following respects:

(1) No compelling privacy interest is identified, nor is it stated why the interest in privacy on such matters outweighs the public's interest in what is by law a public record;

(2) No findings of fact on which the trial court relied are stated;

(3) No conclusions of law, specific or otherwise, forming the basis for the order are stated;

(4) Because the order lacks specificity as to what is actually being sealed (broadly, "the file") and why, it is impossible to determine if the least restrictive means to achieve confidentiality has been employed; and

(5) That lack of specificity also prevents a determination of whether the order is narrowly tailored to keep only the confidential portions sealed and the remainder of the file open to public view.

¶31 Petitioner does not commend to us whether she sought access to needed records, what those records were, or if access was in fact denied. Anyone examining the docket sheet could see the trial court sealed the record. If Petitioner thought the order was entered improperly, or if access to needed information was blocked, she should have pressed the trial court for relief to obtain case information to which she was legally entitled. There could be no valid argument that, as a party to the lawsuit, she was not entitled to full access to all court records, whether sealed or not. And Petitioner fails to explain why she was able to obtain the transcript of the November 2016 hearing for appeal purposes but could not before that time while the matter was still pending before the trial court.

¶32 Despite the trial court's shortcomings vis-à-vis the Open Records Act, Petitioner has not directed us to any portion of the record where she asked the court to correct the errors complained of regarding its decision to seal the record. "Having not called the alleged error to the trial court's attention below, [Petitioner] is not at leave to raise it for the first time on appeal." Wilson v. Still, 1991 OK 108, ¶ 4, 819 P.2d 714.

¶33 Although we strongly urge the trial court to adhere more assiduously to the ORA's letter and spirit in future cases, we will not reverse its decision when it was afforded no opportunity to correct the errors before this appeal was launched. "Nothing tendered here warrants a deviation from the general rule that bars from review issues raised for the first time by appeal." Jernigan v. Jernigan, 2006 OK 22, ¶ 26, 138 P.3d 539.

2. Willful Conduct 

¶34 Petitioner asserts, "the [trial] court erred in issuing the Order of Contempt, absent a clear showing [her] conduct was resistance willfully offered to the execution of a lawful order or process of a court." She claims the trial court refused to accept her testimony, assertions, and proof that she never intended to deprive Respondent of his share of the proceeds from the sale of the Park. She points to Respondent's testimony cited above at the November 30, 2016, hearing in which she claims he testified he received notice of the impending sale of the Park. She claims that Respondent "admitted that he did receive notice and how his earlier statements might have misled the Court to believe that he had no notice that there was anything happening."

¶35 We conclude that even though Respondent acknowledged in his testimony that he knew "something" was happening, Petitioner's evidence is not persuasive that Respondent had actual knowledge of the offer or the contract for sale or that she ever sought or obtained his written consent to the offer as the Decree requires. The record does show that when Respondent reached out to Petitioner in early September 2016 because he thought something might be happening on the sale of the Park and he told her he had heard a rumor that she had sold the Park, Petitioner told him she was "waiting on an offer" and would keep him posted. The documents admitted into evidence, however, show that she received an offer and then made a counteroffer in July 2016. On October 14, 2016, Respondent texted Petitioner the following: "Hello, so I'm hearing more rumors. What's up?" She responded, "I moved to Jesse's. No closing." Both October 17 and October 18 were mentioned in the record as the closing date, meaning that the closing occurred only three or four days after this text. Although Petitioner claims she was unsure about the offer based on funding contingencies on the buyer's part, plainly as of mid-July, she had an offer in writing which she did not convey to Respondent.

¶36 It is a well-accepted tenet of appellate law that "'The trial court was the trier of the facts. The credibility of the witnesses and the effect and weight to be given to conflicting or inconsistent testimony are questions of fact to be determined by the trier of facts, whether court or jury, and are not questions of law for this Court on appeal.'" Kerr v. Clary, 2001 OK 90, ¶ 18, 37 P.3d 841 (quoting Clark v. Addison, 1957 OK 111, ¶ 36, 311 P.2d 256). As the trier of fact, the trial court gave greater credence to Respondent's version of the events, a decision fully within its purview.

¶37 Title 21 O.S.2011 § 565 provides, in part: "Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; resistance willfully offered by any person to the execution of a lawful order or process of a court." "'Willful' is defined as something done 'with the specific intent to fail to do something the law requires to be done.'" Davis v. Davis, 1987 OK CIV APP 41, ¶ 3, 739 P.2d 1029 (quoting Black's Law Dictionary (5th Ed., 1979)).

¶38 Examining the record de novo, we see fully sufficient evidence for the trial court to conclude that Petitioner willfully failed to do something the Decree required her to do--to get Respondent's written consent to any offer lower than $700,000 and to pay him on closing. Petitioner's duties to Respondent pertaining to the sale of the Park are clearly stated in the Decree. The evidence shows that not only did Petitioner fail to get Respondent's agreement in writing to the lower offer, she failed to advise him of the offer or the sale until a month after closing. "[T]he power to punish for contempt is largely within the discretion of the court." Davis, 1987 OK CIV APP 41, ¶ 4. Petitioner's argument that the court's decision was an abuse of discretion is wholly without merit.

3. Attorney Fees and Interest

¶39 As a final matter, Petitioner asserts that the attorney fee award was improper and excessive because there was a "Hold Harmless Clause" in the Decree stating: "Each party is ordered to hold harmless from liability the adverse party on debts each is ordered to pay, including all attorney fees and costs incurred in defense of creditors['] suits or prosecution of any action to enforce this Order." Petitioner's sole claim of error in calculating interest is the trial court's failure to specify whether it is pre- or post-judgment interest. Petitioner again fails, however, to direct this Court to any portion of the record showing she presented these arguments to the trial court. If Petitioner failed to raise the error below, we cannot and will not address it for the first time on appeal. See Wilson v. Still, 1991 OK 108, ¶ 4, 819 P.2d 714.

¶40 Even if this were not the case, 43 O.S.2011 § 110 authorizes the court to award attorney fees in divorce actions:

D. Upon granting a decree of dissolution of marriage, annulment of a marriage, or legal separation, the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances.

E. The court may in its discretion make additional orders relative to the expenses of any such subsequent actions, including but not limited to writs of habeas corpus, brought by the parties or their attorneys, for the enforcement or modification of any interlocutory or final orders in the dissolution of marriage action made for the benefit of either party or their respective attorneys.

We see no error in the trial court's award of attorney fees for the action Respondent brought to enforce the clear terms of the Decree.

¶41 Petitioner cites "12 OS § 12-727.1 (I)" for the proposition that the trial court erred in calculating interest.[3] Title 12 O.S. Supp. 2013 § 727.1(I), provides:

For purposes of computing postjudgment interest as authorized by this section, interest shall be the prime rate, as listed in the first edition of the Wall Street Journal published for each calendar year and as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day following publication in January of each year, plus two percent (2%). For purposes of computing prejudgment interest as authorized by this section, interest shall be determined using a rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year.

How this provides support for Petitioner's proposition is obscure to us, and she provides no further argument on this issue. Petitioner shoulders the burden on appeal to produce "a sufficient record and applicable law to demonstrate error, because error is not presumed." Been v. Been, 2007 OK CIV APP 31, ¶ 11, 158 P.3d 491 (citing Pracht v. Oklahoma State Bank, 1979 OK 43, ¶ 5, 592 P.2d 976). Contrapuntally, in the absence of a "record showing otherwise, we presume the trial court did not err." Cooper v. Cooper, 2009 OK CIV APP 73, ¶ 6, 220 P.3d 36.

CONCLUSION

¶42 We conclude Petitioner has failed to show any trial court error, and we affirm the trial court's decisions.

¶43 AFFIRMED.

BARNES, J., and RAPP, J. (sitting by designation), concur.

FOOTNOTES

[1] Although Petitioner attaches an order filed March 20, 2019, to her Second Amended Petition in Error pertaining to the trial court's rulings at a bond hearing on January 10, 2019, Petitioner does not raise any issues decided at this hearing in her summary of the case or in her issues to be raised on appeal in the Amended Petition in Error, nor does she mention or argue them in her appellate briefing. We therefore consider any issues arising from that March 20 order to be waived. Sup. Ct. Rule 1.11(k)(1), 12 O.S. Supp. 2019, ch. 15, app. 1.

[2] The November 30, 2016, hearing transcript contains no mention, request, or colloquy between the parties about sealing the record nor any trial court ruling on any such request. Nor does the case docket sheet show the filing of any motion by anyone to seal the record. The record does contain a very brief order the trial court entered on January 10, 2017, sealing the file until further order of the court and allowing access only to the District Attorney and Respondent's counsel. This appears to be a form of order used in criminal cases (hence the reference to the District Attorney who has no involvement in this case, but not to Petitioner's counsel who is clearly entitled to access). No explanation, reasoning or citation of authority is given for the entry of the order to seal or for restricting access to the file to only two attorneys. We address this issue in more detail below.

[3] This is clearly a miscite, and we will discuss the application of the correct citation, 12 O.S. Supp. 2013 § 727.1(I).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2021 OK CIV APP 37, SWINEY v. VILLANUEVA
Cited


 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1987 OK CIV APP 41, 739 P.2d 1029, 58 OBJ 1616, Davis v. Davis
Discussed at Length
 2007 OK CIV APP 31, 158 P.3d 491, BEEN v. BEEN
Discussed
 2009 OK CIV APP 73, 220 P.3d 36, COOPER v. COOPER
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1991 OK 37, 810 P.2d 365, 62 OBJ 1228, James v. State Farm Mut. Auto. Ins. Co.
Discussed
 1991 OK 108, 819 P.2d 714, 62 OBJ 3385, Wilson v. Still
Discussed at Length
 1957 OK 111, 311 P.2d 256, CLARK v. ADDISON
Discussed
 2001 OK 90, 37 P.3d 841, 72 OBJ 3071, KERR v. CLARY
Discussed at Length
 1970 OK 51, 467 P.2d 470, DAVON DRILLING COMPANY v. GINDER
Discussed
 2006 OK 22, 138 P.3d 539, JERNIGAN v. JERNIGAN
Discussed
 1979 OK 43, 592 P.2d 976, PRACHT v. OKLAHOMA STATE BANK
Discussed
 2019 OK 37, 443 P.3d 566, SOUTHON v. OKLAHOMA TIRE RECYCLERS, LLC
Discussed
 1982 OK 46, 645 P.2d 496, Hamid v. Sew Original
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 727.1, Postjudgment Interest on Judgments Rendered After January 1, 2005 - Prejudgment Interest on Actions Filed After January 1, 2010
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 565, Definition of Direct Contempt and Indirect Contempt
Cited
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 110, Orders Concerning Property, Children, Support and Expenses
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 24A.30, Court Records - Authority of the Court to Seal a Record
Cited
 51 O.S. 24A.1, Short Title
Cited
 51 O.S. 24A.2, Political Power - Public Policy and Purpose of Act
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA