Seth Woodruff **HERNDON**, Jr., Appellant,

v.

Jill Kreager **HERNDON**, Appellee.
No. 44490.

Supreme Court of Oklahoma.

Oct. 17, 1972.

Rehearing Denied Dec. 11, 1972.

Crowe & Thieman, Harry M. Crowe, Jr., Tulsa, for appellant.

Jones, Givens, Brett, Gotcher & Doyle, by Wm. B. Jones, Tulsa, for appellee.

DAVISON, Vice Chief Justice:

This appeal from a decree of divorce rendered August 27, 1970, does not question that part of the decree that grants Appellee (the wife) a divorce on the ground of incompatibility generated by the fault of the Appellant (the husband). In fact, the husband testified that before their separation, while he and his wife were living together, she was both a dutiful wife and mother. Neither is there a challenge to that part of the decree granting to the wife the custody of the children, Seth Herndon, age 10, Jill Ann Herndon, age 9, and Diane Herndon, age 7, as of the date of the decree, nor to that part of the decree requiring that the husband pay to the wife $175.00 per month per child during minority for support, education and maintenance and medical and dental bills for each child in excess of $100.00 per child per annum.

No attack is made upon the requirement of the decree that the husband pay to the wife the sum of $5,519.40 which is the aggregate of such items of expense as Accountants, Real Estate Appraisers, Petroleum Engineer, Consultation, Depositions and Transcript.

No complaint is made because the decree ordered the husband to assume, pay and discharge and indemnify and hold the wife harmless from all indebtedness of every nature incurred between December 27, 1958, the date of their marriage and February 1, 1970.

The husband does challenge the decree in four respects, the first three of which are inextricably related due to the requirements of proof. First, the husband urges, "The amount of alimony awarded is excessive, unjust and unreasonable under the evidence and is against the clear weight of the evidence." Second, "The Court awarded property to the plaintiff (wife) which was acquired with the proceeds of separate property of the defendant (husband), contrary to law and the applicable principles of equity." Third, "The division of property acquired by joint effort during the marriage is inequitable, unjust and unreasonable, and is against the clear weight of the evidence."

The decree orders the husband to pay the wife as alimony for her support, and not as payment pertaining to a division of property, the sum of $121,000.00 in 121 equal consecutive monthly installments of $1000.00 each. This order was subject to certain provisos including the following: " * * * in the event of the remarriage of the plaintiff [Appellee wife] all unaccrued alimony installments shall terminate unless plaintiff makes proper showing as required by the provisions of Title 12, Oklahoma Statutes Annotated § 1289." Relevant to this order is the undisputed first sentence in the Reply Brief of Appellant: "Since the filing of plaintiff's [the appellee wife's] Answer Brief, the plaintiff has remarried and has filed her suggestion that any issue as to alimony, subsequent to the date of said marriage (Feb. 15, 1972) is now moot." Prior to the remarriage $18,000.00 in alimony had accrued. Accordingly, the claim that the alimony award is excessive, unjust and unreasonable applies to $18,000.00 only.

■ Whether this claim has merit depends upon what matters should be taken into account in a trial court's determination of the amount of an alimony award that does not pertain to a division of the

property acquired by joint industry during the marriage. Although we have said, in Reed v. Reed, Okl., 456 P.2d 529, 533, * * * "there is no rule available by which to measure or determine the amount of alimony or property to be awarded a party in a divorce case as each case depends on its own facts and circumstances; * * * *", we have, in a number of decisions, emphasized certain matters that must be considered. In Dresser v. Dresser, 164 Okl. 94, 22 P.2d 1012, in making this determination, we considered what property of each party was separate property and what property a joint accumulation; whose efforts resulted in the accumulation; the duration of the marriage; whether the marriage was one of affection or convenience; whether the wife was somewhat at fault; respective financial worth of the parties and their conduct as to frugality.

In Harden v. Harden, 182 Okl. 364, 77 P. 2d 721, we said, after referring to the matters specified in Dresser, supra, "It is not necessary that all such considerations be here restated. We do state, however, that it is proper, among other things, to include a fair consideration of the divorced wife's loss of the right of inheritance." In Harden, supra, referring to the husband, we observed in making the determination of alimony and property division, "His property is of great value as heretofore stated, and his assets are quite liquid." An added consideration is the parties' station in life, Dowdell v. Dowdell, Okl., 463 P.2d 948, 952, and the husband's estate and earning capacity, Seelig v. Seelig, Okl., 460 P.2d 433, 436.

Under the record before us the size of the husband's separate estate has an interesting relation to his earning capacity. Although the husband claims the Moskowitz Building in Tulsa, Oklahoma, valued between $63,000.00 and $71,000.00, and the Maciula note of $34,000.00, and mortgage on property in and near Bixby, Oklahoma constitute his separate property, the trial court held otherwise and in making a division of property acquired jointly during marriage awarded these properties to the wife. The annual income of $2500.00 from the note is an item in the wife's Exhibit No. 2, showing the estimated gross annual income of the husband to be $50,950.00. The husband's Exhibit No. 4, shows his gross annual income to be $51,076.00, which includes $13,476.00 rental income from the Moskowitz Building. The award of these properties to the wife as part of the jointly acquired property, reduced the gross annual income of the husband by at least $15,576.00, and their treatment by the trial court as part of the joint estate increased the value of the jointly accumulated property by $105,000.00. Had these properties been awarded to the husband as his separate properties, his annual income would have remained at $51,076.00 according to his own calculations. Such an award would have increased the proportionate value of the jointly acquired property awarded to the wife.

Another aspect of the property division is the real estate venture in Rogers County, on the Verdigris River near Tulsa Port Catoosa involving the purchase of an undivided interest in 4,020 acres, the undivided interest being 27.22194% or approximately 1100 acres, which the court found to be jointly acquired property of the parties during marriage. In the property division, the trial court awarded the wife 25% of this interest in this venture enhanced by the obligation of the husband to discharge the indebtedness against this interest, as well as the indebtedness against any other property awarded the wife.

Returning to the Rogers County real estate venture on the Verdigris River, the testimony on its value per acre reflected a wide difference of opinion between the parties' witnesses. The wife's witness used a valuation of $1339.00 per acre. On this basis the gross value of their interest is $1,488,795. Their share of the mortgage indebtedness (27.222%) is $202,581 resulting in a net value of $1,286,214 for the Verdigris River property. The wife's witness arrived at his value of $1339.00 per acre from an inspection of properties near the subject property and their sales' prices

as follows: (1) 584 acres abutting the Tulsa Port of Catoosa sold for $2000.00 per acre in December, 1968. In October, 1968, 292 acres having a railroad frontage sold for $1335.61 per acre. On January 21, 1969, a 27.62 acre tract sold for $1176 per acre. In June, 1969, a 42 acre tract sold for $3000.00 per acre. A 92½ acre tract purchased in 1963 for $530.00 per acre sold in 1969 for $900.00 per acre. All land in the immediate area of the subject tract is continuing to increase in value.

A witness for the husband was of the opinion that the subject land was of the value of $750.00 per acre. This opinion was based upon his knowledge of sales of much smaller tracts, 33 to 32 acres, of comparable land at $1000 and $1100.00 per acre. An area as large as the subject tract (4,020 acres) could not be expected to sell for more than $750.00 per acre in the opinion of the witness. At $750.00 per acre the gross value of the husband's interest in the subject property would be $883,366.00. Subtracting his share of the mortgage indebtedness $202,581.00 the net value would be $680,785.00.

The decree of the trial court awarded to the wife $5000.00 cash, a residence in Tulsa, Oklahoma valued at $42,000.00, the Maciula note valued at $34,039.00 and the mortgage securing it; the Moskowitz Building in Tulsa, Oklahoma valued at $71,000.00; 25% of the husband's undivided interest (27.222%) in the Verdigris River properties in Rogers County, free of any indebtedness. This interest valued at $750.00 per acre, would equal $207,108.00 and valued at $1000.00 per acre would equal $276,144.00.

The Decree of the trial court awarded the husband cash of $15,100.00; listed stocks of the value of $4100.00; unlisted stocks of the value of $12,600.00 consisting of 586.9647 shares of preferred stock and 401 shares of the common stock of Herndon Drilling Company; 500 shares of the common stock of Herndon Oil and Gas Company; ⅓ of all the issued and outstanding common stock of Tri-Polo Inc.; 750 shares of the common stock of Bowl-Ero-Inc., all of which unlisted stock are valued at $12,600.00.

Since under our authoritative decisions both the earning capacity of the husband and the manner and amount of the joint accumulation of property bear upon a just and equitable award of alimony and a just and equitable property division, it is necessary that we first determine whether the trial court correctly concluded that both the Maciula note and the Moskowitz Building were subject to division as part of the joint accumulation. The relation of the Maciula note and Moskowitz Building to the amount of joint accumulation and the husband's earning power has been explained above.

We conclude that the trial court's inclusion of the Moskowitz Building and the Maciula note and mortgage in the divisible property is not against the clear weight of the evidence. The supposed source of this property is $152,000.00 the husband received by way of stock redemption from the Herndon Drilling Co. who sold its drilling equipment and distributed the proceeds of the sale to stockholders in exchange for Herndon Drilling Company stock. The husband received the stock by gift and inheritance. In addition, the husband disposed of other separate property valued at $16,360.00. An effort was made to trace these funds first into a 32 acre estate including a home for the parties at Bixby, to the extent of $90,000.00 that was later sold by the husband to one Maciula for about the same amount who executed a $40,000.00 note and mortgage to the husband in part payment. Part of the payment in cash was used in the purchase of the Moskowitz Building. But the husband did not offer convincing proof that the $152,000.00 retained its identity. It is to be supposed that he who was Chairman and President of Herndon Drilling Company would show by deposit slips that the money was deposited in a bank and the checks for the purchase of the Bixby property were issued against the account. No such testimony was given

but instead we read the following question by counsel and answer by the husband:

"Q. Do you recall that you testified you assumed you put it [the $152,000.00] in the bank but you are not sure?

"A. Yes, Sir."

■ Referring now to the award of alimony, a paramount factor in decreeing the amount of alimony, is the earning power of the husband. Seelig v. Seelig, supra. Since the Moskowitz Building and the Maciula note and mortgage were awarded to the wife, thus reducing the husband's per annum income by $15,470.00 (approximately 30%), we conclude and find that $18,000.00 accrued alimony should be reduced by 30% to $12,600.00.

In giving consideration to the trial court's division of jointly acquired property, we face the illusion created by the different values placed by the opposing witnesses upon the most valuable asset—the 4,020 acre Verdigris River property. We have heretofore explained the extent of this difference in per acre value.

■ On page 15 of the Appellant husband's brief appears a chart showing the property and its value awarded to the wife and to the husband and indicating the wife is awarded 56% in value and the husband is awarded 44% in value. There is little, if any, dispute in the record as to property values except as to the Verdigris River property. However, for the purpose of the above chart, the Verdigris River property is valued at $750.00 per acre [the husband's valuation] rather than $1339.00 per acre [the wife's valuation]. As nearly as we can determine from the record, the wife's valuation of $1339.00 per acre is too high and the husband's valuation of $750.00 is too low. Ascribing a value of $1000.00 per acre to this property, and otherwise using the property values that appear in the husband's chart, renders the wife's award of the divisible property 45% of the total value and the husband's 55% of the total value. Since the wife brought no property to the marriage and did not contribute directly by way of money or skill to its accumulation, we hold that on the basis of the values that we ascribe to the Verdigris River Properties, the trial court's division of the divisible property is not against the clear weight of the evidence.

Finally the husband says, the $30,000.00 fee for the wife's attorneys is unreasonable. Involved in the argument is the question of whether the wife really needed two experienced domestic relations lawyers, especially from the same firm, and whether the defendant must pay for two if one could perform the service. One firm member was additionally experienced in land litigation and land values. It was suggested that even then two were not needed during the entire trial. It was conceded that either of the wife's lawyers were capable of handling the case alone. Stress is also laid on the value of the property recovered for the wife. Under certain assumptions this value is $427,000.00. But here the attorney's fee, as allowed by the court, must be paid by the one against whom the recovery was made.

■ Qualified witnesses on reasonable fees for the wife's attorneys gave testimony that covered a wide range. A witness for the wife estimated the services of her attorneys to be of the reasonable value of $33,000.00 up to $50,000.00. A qualified witness for the husband testified the same services were reasonably worth $17,500.00. The wife's lawyers did not keep an accurate record of the time spent in their employment. The record does not contain the minimum fee schedule of the Tulsa County Bar Association. A fee in excess of the minimum fee, depending upon the circumstances of each case, may still be assumed to be reasonable.

■ The above considerations prompt us to hold, and we do hold, that the wife's attorney's fees should be reduced from $30,000.00 to $23,500.00. As herein modified as to alimony and attorney's fees, the judgment of the District Court is affirmed.

All the Justices concur.