In the Matter of the ESTATE
OF Laverne HARDAWAY,
Deceased.

Nancy MASSEY, Appellant,

v.

Joe C. HARDAWAY, Appellee.

No. 75255.

Supreme Court of Oklahoma.

March 8, 1994.

See also 872 P.2d 400.

Clyde Stipe, Tim Maxcey, Stipe, Gossett, Stipe, Harper, Estes, McCune & Parks, McAlester, for appellant.

Wayne Russell, Wilburton, Charles D. Neal, Jr., Michael W. Hogan, Steidley & Neal, McAlester, for appellee.

ALMA WILSON, Justice:

During the probate of the estate of Laverne [1] Hardaway, a dispute arose concerning what property was the separate property of Mrs. Hardaway, and what property was acquired by the joint industry of Mrs. Hardaway and her husband, Joe C. Hardaway. Two issues were raised. Where property is acquired and held in the name of the deceased spouse, during the marriage, must the surviving spouse present evidence that the property is joint industry property, or is the property presumed to be joint industry property? If such a presumption exists, what evidence is necessary to overcome such a presumption? We hold that under the circumstances described, evidence must be presented that the property is the separate property of the deceased spouse. We find that the appellant, Ms. Massey, presented sufficient evidence to prove that the contested property was the separate property of the deceased.

On July 18, 1983, Sue Adams, sister of Mrs. Hardaway, filed a petition to be appointed her guardian on the ground that Mrs. Hardaway was mentally incompetent to manage her property. Joe C. Hardaway, her husband of thirty-nine years, filed on that same day, a consent to the appointment of Sue Adams as Mrs. Hardaway's guardian. Laverne Hardaway died on November 20, 1983. On February 10, 1984, Ms. Adams filed an application to resign as guardian, and included her final accounting, approved by the probate court on March 8, 1984.

Mrs. Hardaway had properly dated and executed a holographic will. The will left all of her estate, both personal and real, to Maxey Adams, Nancy Massey and Danni Pointon, who are a nephew and nieces, respectively, of Mrs. Hardaway. She had no children. She stated in her will that she wanted Mr. Hardaway, "took care of." The probate court appointed Nancy Massey and Mr. Hardaway co-administrators of the estate. The estate included substantial real property acquired during the marriage by deed to Mrs. Hardaway from her stepfather, and substantial personal property including certificates of deposit, a checking account, and savings accounts in the name of Mrs. Hardaway, only.

Pursuant to 84 O.S.1981, § 44, Mr. Hardaway elected to renounce and reject the provisions of the will and take according to his rights under the law.[2] The pertinent portions of the law of succession applicable during the probate were provided in 84 O.S.1981, § 213:

> Second. If the decedent leave no issue, the estate goes one-half (½) to the surviv-

---

**1.** Copies of checks signed by Mrs. Hardaway indicate that she spelled her first name "La Vern," but the court documents spell her name "Laverne."

**2.** At the time of Mrs. Hardaway's death, the applicable statute concerning election was 84 O.S.1981, § 44, which provided: "Every estate in property may be disposed of by will; provided however, that a will shall be subservient to any antenuptial marriage contract in writing; but no spouse shall bequeath or devise away from the other so much of the estate of the testator that the other spouse would receive less in value than would be obtained through succession by law; provided, however, that of the property not acquired by joint industry during coverture the testator be not required to devise or bequeath more than one-half (½) thereof in value to the surviving spouse; provided further, that no person shall by will dispose of property which could not be by the testator alienated, encumbered or conveyed while living, except that the homestead may be devised by one spouse to the other." (This statute has subsequently been amended. 1984 Okla.Sess.Laws, ch. 233, § 2.)

ing husband or wife, and the remaining one-half (½) to the decedent's father or mother ... but if there be no father or mother, then said remaining one-half (½) goes, in equal shares, to the brothers and sisters of the decedent, and to the children of any deceased brother or sister, by right of representation.... Provided, that in all cases where the property is acquired by the joint industry of husband and wife during coverture, and there is no issue, the whole estate shall go to the survivor....

Two hearings were held, one on July 17, 1988, and one on August 8, 1988. In the first hearing Nancy Massey testified concerning twenty-six parcels of real property listed in exhibit A of the final account in the probate. She also testified concerning the personal property of Mrs. Hardaway, which included certificates of deposit, savings and checking accounts listed in the final accounting in the amount of $176,771.89. She testified that $61,671.62 of that, in the form of a certificate of deposit, had already been distributed to Mr. Hardaway. Mrs. Hardaway's estate had total receipts in interest from her accounts and from royalty proceeds in the amount of $115,777.15 and expenditures in the amount of $50,706.17, to leave a balance of $65,070.98 in income to the estate from the inception of the probate to the filing of the final account. Part of those expenditures included an allowance to Mr. Hardaway set by the trial court as allowed to the surviving spouse by statute.[3] Mr. Hardaway appeared only through his attorneys. No witness was presented on his behalf.

During the August 8, 1988, hearing, both parties offered documents into evidence. Mr. Hardaway offered joint income tax returns, copies of checks and deposit slips from a joint checking account, copies of certificates of deposit, and mining leases covering portions of the property described in the final accounting. Ms. Massey offered court records from the guardianship estate as evidence concerning what property constituted the separate property of Mrs. Hardaway. Both parties rested.

Of the twenty-six properties listed in the final accounting of the probate, numbers 4 through 11 were deeded to Mrs. Hardaway, who was included among other grantees. Mr. Hardaway was not named in any of those deeds. These are the properties claimed by Ms. Massey as the separate property of Mrs. Hardaway. Mr. Hardaway asserts that these deeded properties were by law the result of the joint industry of Mr. and Mrs. Hardaway. Concerning the personal property described above, Mr. Hardaway asserted that these funds were commingled and therefore should be awarded to him as property resulting from joint industry. The trial court decided the issues in favor of Mr. Hardaway.[4]

To support its award of the deeded property to Mr. Hardaway, the court cited and quoted *Boyes' Estate v. Boyes*, 184 Okla. 438, 87 P.2d 1102, 1105 (1939):

When it is shown by dates of deeds and promissory notes and mortgages that such property was acquired after the marriage and prior to the death of deceased and no evidence to the contrary is introduced as to the source from which the funds came, there is sufficient proof to sustain the court's finding that such property was acquired by the joint industry of the husband and wife during coverture.

The trial court order then finds that Mr. Hardaway is fully entitled to all the property that came to Mrs. Hardaway by deed be-

---

3. Pursuant to 58 O.S.1981, § 314, now codified as 58 O.S.1991, § 314.

4. The parties agreed concerning most of the twenty-six properties. They agreed that the majority of those properties belonged to Mrs. Hardaway as her separate property, coming to her by devise or descent. They also agreed that some of the properties were deeded to both Mr. and Mrs. Hardaway, as tenants in common, and some as joint tenants with the right of survivorship. The parties do not contest the decision of the trial court that Mr. Hardaway is entitled only to one-

half of the property that came to Mrs. Hardaway by devise or descent from the estates of Melvin Towery, Marshall Towery and William Maxey. Neither do they contest that Mr. Hardaway was entitled to all property held in joint tenancy. Under the reasoning in this opinion, the property held by Mr. and Mrs. Hardaway as tenants in common is divisible as follows: All of Mr. Hardaway's one-half interest to him; and concerning Mrs. Hardaway's one-half interest, one-half to Mr. Hardaway and one-half to the devisees of the will.

cause it was received after their marriage and before the death of Mrs. Hardaway.

The same rules apply for determining which property is separate property whether the issue is divorce or death of a spouse. *Sanditen v. Sanditen,* 496 P.2d 365, 367 (Okl. 1972) holds: "The interest of a wife in property acquired during coverture depends upon the occurrence of a statutorily enacted contingency such as divorce, separation, inability to support, homestead and death, all of which emanate from the marriage relationship." In deciding divorce cases this Court has construed separate property to mean: (1) property owned by a spouse prior to the marriage, which retained its separate status during the marriage because it was maintained as separate property, (2) gifts to one spouse from a third-party during the marriage and gifts from one spouse to the other spouse, during the marriage, (3) descents or devises to one spouse during the marriage, maintained as separate property, (4) an exchange, during the marriage, of property in which the owning spouse exchanges separate property for other separate property, (5) the owning spouse's purchase of other property with his/her separate funds during the marriage, (6) compensation received by one spouse for personal injury. *See, Mothershed v. Mothershed,* 701 P.2d 405, 408–411 (Okl.1985); *Templeton v. Templeton,* 656 P.2d 250, 252 (Okl.1982); *May v. May,* 596 P.2d 536, 539 (Okl.1979); *Payne v. Seay,* 478 P.2d 889, 896 (Okl.1970); *Armstrong v. Armstrong,* 462 P.2d 656, 658 (Okl.1969).

This Court has long held that jointly acquired property is that which is accumulated by the joint industry of the husband and wife during the marriage. *Williams v. Williams,* 428 P.2d 218, 222 (Okla.1967); *Longmire v. Longmire,* 376 P.2d 273, 273, 275 (Okla.1962). Once the non-owning spouse acquires an interest in the property through enhancement by that spouse's efforts, skills or funds, that spouse acquires only an interest in the enhanced value of the property. *Templeton,* 656 P.2d at 252. The burden of proof is upon the non-owning spouse to prove such enhancement is the result of joint endeavors. *Templeton,* 656 P.2d at 252.

Ms. Massey claims that the deeded property in controversy was deeded as a result of gifts to Mrs. Hardaway. The original record contains copies of the deeds in question. Three deeds are mineral deeds. Each of the three deeds shows Arthur Maxey, Mrs. Hardaway's stepfather, as grantor and shows seven grantees. Those grantees were Iva Prock, Fonnie Maxey, Walter Maxey, Ruth Morrison, Laverne Hardaway, Sue Adams, and William Maxey, "share & share alike." All three mineral deeds were executed on October 4, 1960. The petition in this probate lists the heirs and devisees of Mrs. Hardaway as: Joe Hardaway, husband, Nancy Massey, niece, Maxey Adams, nephew, Danni Pointon, niece, Sue Adams Lucas, sister, Walter Maxey, half-brother, and Ivy Prock, half-sister. A comparison of the heirs and the grantees in mineral deeds show that a sister, a half-brother, and half-sister were grantees along with Mrs. Hardaway. The guardianship, entered into evidence by Ms. Massey, reveals that Sue Adams, the sister of Mrs. Hardaway, was her appointed guardian and the one who prepared the general inventory and final account in the guardianship. Although the guardianship inventory and the probate inventory are the same, showing the contested properties, both real and personal, as the separate property of Mrs. Hardaway, no document in the guardianship shows that Mr. Hardaway contested Sue Adams' administration of her sister's estate by claiming she had improperly included his property in the guardianship. The guardianship clearly reveals that Mr. Hardaway received notice of all proceedings and that he did not contest the appointment of Sue Adams as guardian for his wife. Finally, there was Ms. Massey's testimony that the contested property was a part of the estate of Mrs. Hardaway.

To contest this evidence, Mr. Hardaway presents no testimony and merely offers joint tax returns, copies of checks and deposit slips from a joint checking account, copies of certificates of deposit and mining leases. After Mr. Hardaway's attorney submitted the exhibits he argued that the leases submitted were signed by both parties. No testimony was presented concerning what these docu-

ments are supposed to prove. Parties with separate property may file joint tax returns in order to benefit from the better tax rate. The fact that the parties had a joint checking account and some joint certificates of deposit does not show that the other funds in the name of Mrs. Hardaway only, were commingled. And the fact that the parties both signed mineral leases does not support an intention to commingle the property or the funds.

An examination of those leases and the legal description of the twenty-six parcels of real property listed reveals that Mrs. Hardaway owned multiple interests in one piece of property. As an example, in Section 11–6N–22E of Latimer County, in the N/2 of the NW/4 one conveyance shows her ownership as ⅛ of 150 acres of the minerals, overlapped by another conveyance showing her ownership of ¹⁄₁₂ of 150 acres of the minerals, overlapped by another conveyance showing ⅛ of 75.76 acres of the surface. Out of that N/2 is a ten acre tract in which she has two deeds listed in the inventory, each deed showing a ½ interest of the surface held in common with Mr. Hardaway. That same ten acres is also covered by two other deeds each showing a ¼ interest in that acreage along with the same interest in other parcels of land. The apparent discrepancies are not explained and are unnecessary to determine the issues before this Court.

 Although there is a presumption that property purchased during coverture is property acquired by the joint efforts of husband and wife, the presumption is prima facie only, and may be overcome by evidence showing that the gifts and inheritances received were kept substantially intact, even though their form changed. *Perdue v. Hartman*, 408 P.2d 293, 296 (Okla.1965). Ms. Massey has certainly presented such evidence. Concerning evidentiary issues, a presumption of correctness exists in favor of a trial court's findings in equity cases, but if the record reveals that the conclusions reached by the trial court are against the clear weight of the evidence, this Court has always reserved the right, and acknowledged the duty, of setting aside the judgment of the trial court and rendering the judgment that

should have been rendered. *Peyton v. McCaslin*, 417 P.2d 316, 320 (Okla.1966).

The guardianship presented prima facie evidence concerning which property was the separate property of Mrs. Hardaway and which property was the joint property of Mr. and Mrs. Hardaway. "Prima facie evidence is such evidence as in the judgment of law is sufficient to establish a fact, and if not rebutted, remains sufficient to establish that fact." *Glenn Smith Oil Co. v. Sheets*, 704 P.2d 474, 478 (Okla.1985). With the documents in the original record and the testimony of Ms. Massey that the inventory accurately reflected the ownership of the property, Ms. Massey has presented a prima facie case for the accuracy of the distribution she advocates. Mr. Hardaway, in contrast, has presented no rebutting evidence.

Ms. Massey has proved that the property deeded to Mrs. Hardaway, but not to Mr. Hardaway, was the separate property of Mrs. Hardaway. Mr. Hardaway has not proved that the value of such property was enhanced by him. Ms. Massey has proved that the personal property consisting of certificates of deposit, checking and savings accounts in Mrs. Hardaway's name only, was her separate property. Mr. Hardaway has not proved that those funds were commingled.

Because Ms. Massey's testimony concerning the property in controversy stands unchallenged by contradictory evidence and is further supported by the judgment entered in the guardianship case, the judgment of the trial court is REVERSED AND REMANDED with instructions to find in favor of Ms. Massey. The trial court shall divide the property deeded to Mrs. Hardaway as a grantee, but which does not include Mr. Hardaway as a grantee, as follows: one-half to the devisees of the will, and one-half to Mr. Hardaway. The trial court shall divide the personal property, that is, certificates of deposit, checking and savings accounts in the name of Mrs. Hardaway only, as follows: one-half to the legatees of the will, and one-half to Mr. Hardaway.

CERTIORARI PREVIOUSLY GRANTED. COURT OF APPEALS OPINION VA-

CATED. JUDGMENT OF TRIAL COURT REVERSED AND REMANDED.

All Justices concur.

