OSCN Found Document:WILLIAMS v. WILLIAMS

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 WILLIAMS v. WILLIAMS
2024 OK CIV APP 8
Case Number: 119960
Decided: 04/18/2023
Mandate Issued: 02/15/2024
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2024 OK CIV APP 8, __ P.3d __

 

IN RE THE MARRIAGE OF:

CELES WILLIAMS, Petitioner/Appellant,
v.
FRANK WILLIAMS, Respondent/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE ELIZABETH H. KERR, TRIAL JUDGE

REVERSED AND REMANDED WITH DIRECTIONS

Jim C. McGough, Catherine Z. Welsh, J. Travis Barnett, Daphne A. Burns, WELSH & MCGOUGH, PLLC, Tulsa, Oklahoma, for Petitioner/Appellant

Virginia Henson, VIRGINIA HENSON, PLLC, Norman, Oklahoma, for Respondent/Appellee

DEBORAH B. BARNES, VICE-CHIEF JUDGE:

¶1 Celes Williams (Wife) appeals from that portion of the district court's Decree of Dissolution of Marriage finding that a certain business is the separate property of Frank Williams (Husband). We reverse and remand with directions.

BACKGROUND

¶2 The parties were married in 2012. Two children were born of the marriage --in 2013 and 2017. In 2018, Wife filed a petition for dissolution of marriage.

¶3 Pertinent to this appeal, the district court, in its Decree filed in September 2021, found that Slyder Energy Solutions, and all of its assets and debts, are the separate property of Husband. The court stated in the Decree that "[b]oth [parties] testified that in 2010 [Wife's father] signed a $100,000.00 line of credit (which was repaid by [Husband]) to start the company." The court also found that Wife's father "was named as the service agent" for the company, and that Wife and her father were both "signatories to the organizing document of the LLC[1] that was filed with the Secretary of State[.]" However, the court found it

was not presented case law or statutory authority by [Wife] that being a service agent for an LLC or a signatory on the organizing document of the LLC constitutes a partnership/membership in the underlying LLC. Further, Petitioner did not present the Court with a contract between [Wife's father] and [Husband] outlining partnership between the two. Finally, the fact that [Wife's father] is the father of [Wife] is not a factor for the Court to consider since the marriage of the parties did not occur[] until December 31, 2012, well after the creation of the LLC.

¶4 The district court also found that, "[i]n the Operating Agreement, there is a section titled 'Members' which states that [Husband] is the initial member of the LLC and owned 100% of any shares and 100% of the ownership. Neither [Wife's father] nor [Wife] is listed as a member/owner of the company." Moreover, the court stated that tax documents submitted to the court by Husband show Husband "as the only shareholder."

¶5 As to whether Wife could be awarded a portion of the business as a result of the value of the business increasing during the marriage, the court stated that the burden of proof in this regard lies with Wife and that Wife's "expert failed to make a determination that the increase in value (if any increase even existed) was at the hand of either party." The court acknowledged "[t]he fact [Wife] had a role in the business is not disputed," but stated "the extent of her role is" disputed. The court noted that Wife testified "that she worked 3-4 times a week for the business," "answered emails, made payroll for a period of time and interacted with the accountant on behalf of the business." The court noted that Husband testified Wife "did work on behalf of the business, though he could not recall how much [Wife] worked," but stated it was minimal. The court stated it "found [Husband's] lack of memory questionable[.]" Nevertheless, the court stated that "nothing was provided by [Wife] to quantify measurable proof as to what increase in the value [of the business] was attributable to either party's active involvement in labor." The court stated that Wife's expert "did not provide the Court what is required under the Thielenhaus test" -- referring to the Oklahoma Supreme Court opinion of Thielenhaus v. Thielenhaus, 1995 OK 5, 890 P.2d 925. The court stated Wife's expert "did not provide the Court a Thielenhaus calculation nor provide any distinction in increase in the value of Slyder attributable to either parties' skill and effort versus what was attributable to inflation, economic conditions or other passive enhancements of the business." The court concluded it was "left with no ability to quantify any increase due to anything other than market forces or other factors beyond the control of either party." Thus, the court found the business and all its assets and debts remain the separate property of Husband.

¶6 From this portion of the Decree, Wife appeals.

STANDARD OF REVIEW

¶7 "A divorce suit is one of equitable cognizance in which the trial court has discretionary power to divide the marital estate." Metcalf v. Metcalf, 2020 OK 20, ¶ 9, 465 P.3d 1187, 1191 (footnote omitted). See also Colclasure v. Colclasure, 2012 OK 97, ¶ 16, 295 P.3d 1123, 1128 ("A divorce suit is one of equitable cognizance . . . ."). By statute,

all property acquired during marriage by the joint industry of the husband and wife must be fairly and equitably divided by the trial court. This is true regardless of how title to the property is held. The marital estate need not necessarily be equally divided to be an equitable division because the words "just" and "reasonable" in [43 O.S. 2021 § 121] are not synonymous with "equal."

Gray v. Gray, 1996 OK 84, ¶ 15, 922 P.2d 615, 620 (citations omitted). "[T]he trial court is required . . . to effect a fair and equitable division of property acquired during the coverture by the joint industry of husband and wife." Moyers v. Moyers, 1962 OK 146, ¶ 0, 372 P.2d 844, 844 (Syllabus by the Court). See also Colclasure, ¶ 18, 295 P.3d at 1129 ("The trial court is obligated by statute to ensure a fair and just division of the marital assets[.]"). "An appellate court will not disturb the trial court's property division absent a finding of abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence." Colclasure, ¶ 16, 295 P.3d at 1129 (footnote omitted).

ANALYSIS

I. Separate Property

¶8 Wife first argues the district court erred in holding that the business was Husband's separate property prior to the marriage. We agree that the circumstances of the present case are not as straightforward as in other cases, such as Thielenhaus v. Thielenhaus, 1995 OK 5, 890 P.2d 925, in which the husband's retirement fund through his employer was commenced prior to the marriage and without any assistance or contribution from the wife or her family. Here, as stated above, Wife's father "signed a $100,000.00 line of credit . . . to start the company" before the marriage; Wife's father "was named as the service agent" for the company before the marriage; and Wife and her father were both "signatories to the organizing document of the LLC that was filed with the Secretary of State" before the marriage. However, not only is it undisputed that these events occurred before the marriage, but testimony and evidence was also presented that

one does not "list with the Oklahoma Secretary of State who the owners are";

the operating agreement sets forth the owners and only Husband is listed as an owner in the operating agreement;

no subsequent "documentation" gave any ownership interest to Wife; and

as Wife agreed at trial, she was "never listed as an owner on any document[.]"

Moreover, testimony was elicited that

the business was started in 2010, while the parties were dating, and possibly engaged, but more than two years before they were married;

the parties "split up" for more than a year -- "in the start of 2011" until "the summer of 2012" -- during the period between the establishment of the business in 2010 and the parties' marriage in December 2012; and

Wife, in her own words, had a job unrelated to the business prior to the marriage, her role in the business "was minimal" prior to the marriage, and she did not take on a "larger role" in the business until after the couple was married.

¶9 Moreover, the court observed in the Decree that tax documents submitted by Husband represent Husband, at least for tax purposes, "as the only shareholder." Finally, the district court noted that "[n]o physical evidence regarding the line of credit was presented to the Court," and it appears the district court found credible Husband's testimony that Wife's father was merely a "cosigner" on the "line of credit" or "loan," that Wife's father did not "put any money into that line of credit," and Wife's father "never made a single payment[.]"[2]

¶10 Although Husband, on appeal, "concedes that title alone is not determinative if the property was acquired by joint industry," his assertions that, inter alia, "the business [was] started by [him] before the marriage," that he "gave no interest in the company to Wife," and "the tax records of the parties" as well as the operating agreement "support that Husband was the sole owner" of the company all find support in the record. Having considered all the facts and circumstances, we conclude the trial court's decision that the business was the separate property of Husband prior to the marriage is not clearly against the weight of the evidence. Therefore, the court did not abuse its discretion in this regard.

II. Commingling -- Treatment of the Property

¶11 Wife argues that "even assuming . . . [the business] was [Husband's] separate property before the marriage, the joint industry and actions of the parties changed the property to marital property." She asserts that "through their combined . . . efforts and skills in building [the business], they changed the character of the property to marital property" during the marriage.

¶12 Wife cites to Standefer v. Standefer, 2001 OK 37, 26 P.3d 104, and Umber v. Umber, 1979 OK 24, 591 P.2d 299, in support of this argument. In Standefer, the Oklahoma Supreme Court considered whether funds acquired during the marriage from a settlement in a personal injury suit were marital funds. As accurately summarized by Wife, the parties in Standefer "combined their efforts and claims against a tortfeasor" -- i.e., against a tortfeasor who caused injury to the husband in an accident -- "to successfully obtain a combined judgment and settlement[.]" The funds were found to constitute marital property. However, the parties' combined efforts, and the payment of the funds, all occurred during the marriage, and the Standefer Court explained that "[p]roperty acquired during the marriage is presumed to have been jointly acquired." Standefer, ¶ 15, 26 P.3d at 108 (citation omitted).

¶13 In Umber, after the spouses were married they "commingled and utilized" separate funds in order to purchase a pharmacy. 1979 OK 24, ¶ 11, 591 P.2d at 302. The lion's share of the funds was from the husband; however, the Court indicated that commingling of the funds occurred because the parties combined their separate property during the marriage to buy the pharmacy. See also Herndon v. Herndon, 1972 OK 134, ¶ 15, 503 P.2d 545, 548 (spouse claiming existence of separate funds in an asset purchased during marriage must "offer convincing proof that [funds in question] retained" separate character).[3]

¶14 The analysis found in these cases is inapt because, in the present case, Husband started the business prior to the marriage.[4] That is, the analysis pertaining to commingling of assets during the marriage in order to purchase a business (Umber), and to the acquisition of funds during the marriage (Standefer), are inapplicable to the present case which involves separate property prior to the marriage. This case is, instead, more properly viewed as one involving a spouse's separate property that increased in value during the marriage as a result of the active efforts of the parties, as discussed further below.

III. Commingling -- Abuse of Corporate Distinction

¶15 Prior to turning to an analysis of the enhancement value of the business, we must first address Wife's argument -- one similar to her previous argument -- that "even assuming . . . [the business] was [Husband's] separate property before the marriage, he commingled the business, its income, expenses and assets with the marriage and marital income, expenses and assets, and grossly abused the corporate distinction, such that [the business] became property of the marital estate."

¶16 Generally, courts exclude from the marital estate "property owned by a spouse before the marriage, which retains its separate status during coverture because it is maintained in an uncommingled state as a spouse's individual property." Thielenhaus, ¶ 9, 890 P.2d at 930-31 (footnote omitted). However, "spouses may treat separate property in a manner so that it alters their legal relationship to the property, and it becomes property of the marital estate." Standefer, ¶ 16.

¶17 The deficiency in Wife's argument is factual. That is, she states that "everything was commingled" and Husband "grossly abused the corporate distinction," but little evidence was introduced at trial that supports these assertions. Wife states, in particular, that "the couple's personal vehicles and boat" were paid "through [the business]." Evidence was briefly introduced regarding a boat, as well as an Audi (in addition to various trucks), which were purchased during the marriage. However, Husband testified these were business expenses and that the boat, in particular, was purchased as a business expense in order to "take clients out."[5]

¶18 Evidence was also presented that a certain vehicle owned by the business was sold during the marriage and that the proceeds from this sale were placed in a personal account (rather than a business account). Husband testified this was "a sale of a drill truck" for $165,000. He testified he deposited this amount in a personal account because "[t]he guy I sold it to wrote my name on the check." He testified he then, in consultation with his CPA, transferred $77,000 to a business account, and took the remaining amount out as "a draw" from the business (i.e., by leaving that amount in the personal account and supposedly reporting this on his taxes). He testified that money was subsequently spent by Husband and Wife during the marriage.

¶19 In her testimony, Wife did not assert that, for example, the Audi and the boat were used for non-business purposes. Wife did testify that "the business account" was used "to pay personal expenses of the marriage." However, she also stated in this portion of her testimony that such payments were made only after Husband "would take a draw out of the [business] account," which is consistent with Husband's testimony, as well as with Husband's expert's testimony, that a taxable draw would sometimes be taken out of the business. Regardless, the district court was not required to find Wife's testimony credible in this regard.

¶20 Although Wife asserts the business should have been found to have been commingled because Husband "grossly abused the formal distinction between [the business], himself, and the family," and that he used the business "corporate account as the marital checking account to pay living expenses," we find no clear evidence in the record of such conduct. The district court's contrary findings are not clearly against the weight of the evidence, and we conclude no abuse of discretion occurred in this regard.

IV. Increase in Value During the Marriage

¶21 Wife asserts "it was obvious from the record" that the business increased in value during the marriage and that this increase was "effected through the joint efforts and skill of both parties," thus requiring an award to Wife of an equitable portion of this enhancement value. It has long been the case in Oklahoma that the enhancement in value of separate property resulting from the active efforts of the parties during the marriage should be treated as property subject to equitable division. For example, in Moyers v. Moyers, 1962 OK 146, 372 P.2d 844, the Oklahoma Supreme Court stated:

The business establishment [i.e., a small business engaged in retail marketing of electrical supplies] owned by the wife at the time of her marriage did doubtless constitute her separate property. However, it is clear from the record that the enhancement in the value of this business and profits therefrom were not effected through normal appreciation or ordinary course of events occurring during the coverture, but by application of joint efforts and skill of both parties who participated together in the business venture. We, therefore, hold that both the increase in the value of the wife's business from the time of their marriage . . . , as well as the profits realized therefrom, were attributable to the joint industry of the spouses, and should be treated as jointly acquired property of the marriage.

The law is settled that . . . the trial court is required by the terms of the statute to effect a fair and equitable division of property acquired during the coverture by the joint industry of husband and wife.

Moyers, ¶¶ 7-8, 372 P.2d at 845-46 (citations omitted).

¶22 In Thielenhaus, the Supreme Court clarified that "the in-marriage enhancement (or growth)" in one spouse's separate property during the marriage "which is attributable to . . . either spouse's monetary contribution, skill or effort is a divisible marital asset . . . ." 1995 OK 5, ¶ 1, 890 P.2d at 928 (original emphasis omitted) (emphasis added). The Court stated that "[t]he burden is upon the non-owning spouse to show that the enhancement is the result of either spouse's endeavors." Thielenhaus, ¶ 9, 890 P.2d at 931 (footnote omitted).

¶23 In Thielenhaus, the separate property in question was a passive retirement account -- i.e., a fund (described at one point in the opinion as a "pension account") "managed by neither spouse[.]" Thielenhaus, ¶¶ 1 & 7, 890 P.2d at 928 & 930. The Court stated that "any increase in the [owning spouse's] separate (pre-marital) interest in that fund, produced by investment (managed by neither spouse), appreciation, inflation, changing economic conditions or circumstances beyond the parties' control is to be deemed the [owning spouse's] separate property[.]" Thielenhaus, ¶ 1, 890 P.2d at 928 (emphasis omitted).

¶24 In the present case, the district court found Wife could not be awarded any portion of the enhancement value of the business because "[Wife's] expert failed to make a determination that the increase in value (if any increase even existed) was at the hand of either party." The district court stated that the non-owning spouse must provide "measurable proof as to what increase in the value [of the business] was attributable to either party's active involvement in labor" as distinguished from "what was attributable to inflation, economic conditions or other passive enhancements of the business." The court concluded it was "left with no ability to quantify any increase due to anything other than market forces or other factors beyond the control of either party."

¶25 In this respect, the district court abused its discretion. It is undisputed the business increased in value during the marriage. Husband's expert set forth in his report and testified at trial that the business had "a premarital value of $214,900," and a value at the end of the marriage of $799,000. Wife's expert did not provide a precise valuation for the business at the beginning of the marriage, but nevertheless testified the business had "very little in the way of operations prior to" the marriage,[6] and that the parties grew the business during the marriage "from nothing to something[.]" Husband's expert generally agreed with this assessment at trial, stating, for example, that "2013 [i.e., the year following the parties' marriage on December 31, 2012] is the first real full year of operation," and that Husband did not have "much of a business at all" prior to the marriage. Husband's expert also relied solely on data from 2013 in order to arrive at a valuation of the business in 2012 (i.e., at the time of the marriage) due in part to a lack of data (or at least a lack of a "full year of earnings") generated in 2012, which Husband's expert described as "just a small split year[.]" Wife's expert opined it was inappropriate to use data generated during the marriage to determine the premarital value. Regardless, at least one precise expert valuation of the business at the time of marriage was presented at trial ($214,900).

¶26 Moreover, contrary to Husband's expert's opinion, Wife's expert opined that the value of the business at the end of the marriage was $3,037,500 -- that is, the total value of the business (in Wife's expert's opinion) minus the goodwill value Wife's expert attributed to Husband. Wife's expert asserted, and Wife took the position, that this amount represented the divisible marital value of the business. Taken together, the court was presented with a range of enhancement values of the business during the marriage: from a low of $584,100 (i.e., $799,000 minus $214,900), to a high of $2,822,600 (i.e., $3,037,500 minus $214,900).[7] Even according to Husband's expert's valuations, the business increased over half a million dollars during coverture.

¶27 It is also undisputed that the parties -- primarily Husband -- undertook tremendous efforts during the marriage directly related to the operation and growth of the business. Husband's efforts are evidenced, for example, by his receiving, in his words, "[b]etween 80 and 150" business emails per day, and making or receiving "between 125 and probably 160" business calls per day, or "10,500" total communications per month related to the business. The business, as explained by Wife's expert, "is a single-member LLC," "not a publicly-traded company." Husband's expert also explained it is a single-member LLC, with Husband "owning 100 percent." Based on a review of the testimony elicited at trial, it is clear Husband -- described essentially as the keyman and sole executive -- ran the company, controlled its direction, met with its customers, and communicated regularly with its bankers. It is also undisputed Wife expended considerable efforts assisting with the business during the marriage (though not relative to Husband's efforts) in between giving birth to the couples' two children. See also Ford v. Ford, 1988 OK 103, ¶ 4, 766 P.2d 950, 952 ("Where one spouse brings separate property to a marriage and an increased value of the property occurs as a result of joint efforts of the husband and wife, the other spouse is entitled to an interest in the appreciation of the property," and "[t]he share of 'joint industry' attributable to the wife need not be in the form of a monetary contribution or actually working in the . . . office as suggested by the husband."). Neither spouse received a full salary for their efforts.[8]

¶28 Under these circumstances, the burden placed on Wife, as the non-owning spouse, "to show that the enhancement is the result of either spouse's endeavors," Thielenhaus, ¶ 9, 890 P.2d at 931, was satisfied. The articulation of this burden as set forth in Templeton v. Templeton, 1982 OK 127, 656 P.2d 250 -- the source of the language in Thielenhaus -- is lengthier and more illuminating:

In order for a spouse to successfully prove that enhanced value is the result of joint endeavors, it must be shown that the net worth of the property increased during the marriage as the direct result of substantial contribution by the spouse [i.e., per Thielenhaus, either spouse] of effort, skill or funds. Enhancement in the value of a spouse's separate property which is caused by appreciation, inflation, changing economic conditions, or circumstances beyond the parties' control is not jointly acquired property unless the non-owning spouse can prove that his/her [i.e., per Thielenhaus, either spouse's] contributions were also a causal factor. If so, the spouse is entitled to an interest in the appreciation of the property created through his/her efforts.

Templeton, ¶ 5, 656 P.2d at 252 (footnotes omitted).[9]

¶29 Wife has certainly proved marital efforts were a causal factor in the enhancement in value of the business[10] and, thus, she is entitled to an interest.[11] Indeed, having taken the position -- one not unreasonable or unsupported by the evidence in this case -- that all of the enhanced value ("from nothing to something," i.e., $3,037,500) represented the marital value of the business, Wife had no additional burden or obligation to show that some portion of this value was the result of passive factors.

¶30 Rather, in the present case, Wife satisfied her burden "to show that the enhancement is the result of either spouse's endeavors," Thielenhaus, ¶ 9, 890 P.2d at 931, a burden that does not imply the non-owning spouse must always present evidence that a portion of the increase was the result of passive factors -- i.e., in circumstances in which the entirety of the increase in value during the marriage may be attributable to spousal efforts. In such a circumstance, the owning spouse is, of course, free to disagree and present such evidence, but it would be inequitable and illogical to require the non-owning spouse to do so.

¶31 As above stated, "[t]he law is settled that . . . the trial court is required . . . to effect a fair and equitable division of property acquired during the coverture by the joint industry of husband and wife," Moyers, 1962 OK 146, ¶ 8, 372 P.2d at 846, and in a marital dissolution proceeding, which is of equitable cognizance, "[t]here is always room for . . . [the] exercise of discretion to achieve a fair and equitable result." Thielenhaus, ¶ 11, 890 P.2d at 932 (footnote omitted). We conclude the district court abused its discretion in finding that the increase in value of the business during the marriage is the separate property of Husband. We remand this matter to the trial court to calculate the jointly-acquired marital portion of the value of the business from the evidence presented and divide that portion between Husband and Wife in an equitable manner.

CONCLUSION

¶32 We reverse that portion of the Decree finding that the increase in value of the business during the marriage is the separate property of Husband. On remand, the district court is directed to calculate the jointly-acquired marital portion of the value of the business from the evidence presented, and divide that portion between the parties in an equitable manner.

¶33 REVERSED AND REMANDED WITH DIRECTIONS.

WISEMAN, P.J., and HIXON, J., concur.

FOOTNOTES

[1] Reference to "the LLC" is to Slyder Energy Solutions.

[2] Husband also testified he "was responsible" for the loan and agreed that Wife's father's "use as a cosigner was never called into use (sic)[.]" As indicated above, it appears the court found in the Decree that Wife's father merely "signed a $100,000.00 line of credit . . . to start the company[.]" (Emphasis added.)

In equity cases, "[t]he judgment of the appellate court should not lightly displace the judgment of the trial court, which had the advantage of observing the witnesses on the stand." This advantage is the reason that appellate courts in equity cases show great deference to trial court determinations of the credibility of the witnesses and the weight to be given their testimony.

Peoplelink, LLC v. Bear, 2014 OK 65, ¶ 7, 373 P.3d 1019, 1021 (citations omitted). "The trial court is ideally situated to assess the credibility of witnesses." Childers v. Childers, 2016 OK 95, ¶ 18, 382 P.3d 1020, 1024 (footnote omitted). See also Bills v. Bills, 2022 OK CIV APP 27, ¶ 14, 514 P.3d 485, 489 ("The court chose to believe Wife's testimony over Husband's recollection, and this Court will defer to the trial court's judgment. The credibility of witnesses and the effect and weight of conflicting or inconsistent testimony are questions of fact to be determined by the trier of fact, and are not questions of law for the court on appeal." (citation omitted)); Mitchell v. Mitchell, 2021 OK CIV APP 17, ¶ 36, 491 P.3d 759, 767 ("The trial court was the trier of the facts. The credibility of the witnesses and the effect and weight to be given to conflicting or inconsistent testimony are questions of fact to be determined by the trier of facts, whether court or jury, and are not questions of law for this Court on appeal." (citation omitted)).

[3] The Umber Court also stated that the wife "obtained her pharmacy degree and worked in the store," and "[a]s the result of the joint industry of the parties, $150,000.00 was accumulated over the twenty year period of the marriage." 1979 OK 24, ¶ 11, 591 P.2d at 302. We address Wife's claim to a portion of the enhancement value of the business further below.

[4] The name of the business was subsequently changed, in September 2012, and the scope of the business was expanded at this time into other areas in the arena of oil and gas production; however, it is undisputed that these changes also occurred prior to the marriage (which occurred December 31, 2012). Thus, these facts do not significantly affect our analysis.

[5] Wife responded in the affirmative when questioned by her counsel whether the "boat was bought out of a Slyder account," but this testimony is not inconsistent with Husband's testimony. Wife did not testify, for example, that the boat was used by the parties for non-business purposes.

[6] Wife's expert appears to have been particularly referring to the period before the name change and expansion of scope of the business in September 2012.

[7] This is not to exclude the possibility that a fact finder might find the $214,900 valuation at the start of the marriage to be inflated based on the above-quoted testimony of the experts, thus leading to a somewhat higher range of possible values based on a lower starting valuation.

[8] Wife did not receive a salary, and Husband eventually received a salary for tax purposes, but of only $40,000. The experts opined a salary for Husband of either $100,000 or $150,000 would have been more realistic.

[9] The Thielenhaus Court cited to two cases: In re Estate of Hardaway, 1994 OK 30, 872 P.2d 395, and Templeton. The Hardaway Court, citing solely to Templeton, stated that "[o]nce the non-owning spouse acquires an interest in the property through enhancement by that spouse's efforts, skills or funds, that spouse acquires only an interest in the enhanced value of the property," and "[t]he burden of proof is upon the non-owning spouse to prove such enhancement is the result of joint endeavors." Hardaway, 1994 OK 30, ¶ 10, 872 P.2d 395, 398. The more expansive statement, as above stated, is found in Templeton.

[10] To be clear, whether or not Wife worked in the business (or whether or not the business increased in value as a result of her office work), Wife established the value of the business increased during the marriage as a result of Husband's efforts, skill, or funds, and this increase is a divisible marital asset. As emphasized above, "the in-marriage enhancement (or growth)" in one spouse's separate property during the marriage "which is attributable to . . . either spouse's monetary contribution, skill or effort is a divisible marital asset . . . ." Thielenhaus, ¶ 1, 890 P.2d at 928 (original emphasis omitted) (emphasis added).

[11] The following discussion by the Supreme Court of Minnesota is apt:

Given the nature of the assets of the business [prior to the marriage] and of the corporate assets today, the increase in the value of the business cannot be reasonably attributed to market conditions. There can be little doubt that . . . essentially prosperous and mildly inflationary economic conditions provided a favorable climate in which a budding business could grow and flower. But a business, like a garden, must be tended if it is to flourish. . . . [W]ere it not for the personal efforts contributed by the spouses, the investment would have withered and died . . . . What [the husband] really invested in was the opportunity to turn his talents toward the development of an enterprise in which he had a personal stake.

Nardini v. Nardini, 414 N.W.2d 184, 194-95 (Minn. 1987). In the present case, Husband attempted to show that much was outside his control. He testified the business is a "small fish in a big pond," and "there's a lot of factors that we can't control. The oil and gas business as a whole is volatile." Husband also mentioned in his testimony the Organization of the Petroleum Exporting Countries (OPEC) and its ability to effectively reduce (or increase) global oil and gas prices. It is difficult to see how this particular testimony -- regarding adverse factors -- undercuts the importance of active efforts and elevates passive factors as drivers of the success of the business; regardless, this testimony does not vitiate active efforts as the primary factor in the tremendous return on investment during the marriage.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2021 OK CIV APP 17, 491 P.3d 759, 
IN RE THE MARRIAGE OF MITCHELL
Discussed

 
2022 OK CIV APP 27, 514 P.3d 485, 
BILLS v. BILLS
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1988 OK 103, 766 P.2d 950, 59 OBJ 2443, 
Ford v. Ford
Discussed

 
1994 OK 30, 872 P.2d 395, 65 OBJ 959, 
In the Matter of the Estate of Hardaway
Discussed at Length

 
2001 OK 37, 26 P.3d 104, 72 OBJ 1190, 
STANDEFER v. STANDEFER
Discussed

 
1962 OK 146, 372 P.2d 844, 
MOYERS v. MOYERS
Discussed at Length

 
1995 OK 5, 890 P.2d 925, 66 OBJ 338, 
Thielenhaus v. Thielenhaus
Discussed at Length

 
1972 OK 134, 503 P.2d 545, 
HERNDON v. HERNDON
Discussed

 
1996 OK 84, 922 P.2d 615, 67 OBJ 2328, 
Gray v. Gray
Discussed

 
2012 OK 97, 295 P.3d 1123, 
COLCLASURE v. COLCLASURE
Discussed

 
2014 OK 65, 373 P.3d 1019, 
PEOPLELINK, LLC. v. BEAR
Discussed

 
1979 OK 24, 591 P.2d 299, 
UMBER v. UMBER
Discussed at Length

 
2016 OK 95, 382 P.3d 1020, 
CHILDERS v. CHILDERS
Discussed

 
2020 OK 20, 465 P.3d 1187, 
METCALF v. METCALF
Discussed

 
1982 OK 127, 656 P.2d 250, 
Templeton v. Templeton
Discussed

Title 43. Marriage

 
Cite
Name
Level

 
43 O.S. 121, 
Restoration of Maiden or Former Name - Alimony - Property Division
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA